**UNITED STATES of America, Plaintiff,**

**v.**

**STATE OF MICHIGAN; John Engler, Governor of Michigan; Michigan Department of Corrections; Kenneth M. McGinnis, Director, Michigan Department of Corrections; Dan L. Bolden, Deputy Director, Michigan Department of Corrections; John Jabe, Regional Administrator, State Prison of Southern Michigan; Pamela K. Withrow, Warden, Michigan Reformatory; and John Hawley, Warden, Marquette Branch Prison, Defendants.**

No. 1:84 CV 63.

United States District Court, W.D. Michigan.

July 3, 1996.

Michael Hayes Dettmer, U.S. Atty., U.S. Atty's Office, Grand Rapids, MI, Edwin Meese III, Attorney General, Civil Rights Division, Timothy R. Payne, Laurie J. Weinstein, Philip A. Guzman, Mellie H. Nelson,

U.S. Department of Justice, Washington, DC, for U.S.

Leo H. Friedman, Susan Przekop–Shaw, Michael A. Nickerson, Asst. Atty. Gen., Frank J. Kelley, Attorney General, Corrections Division, Frank J. Kelley, Attorney General, Tort Defense Division, Thomas C. Nelson, Asst. Atty. General, Lisa C. Ward, Lisa C. Ward Law Offices, Lansing, MI, for State of Mich.

Leo H. Friedman, Susan Przekop–Shaw, Michael A. Nickerson, Barbara A. Schmidt, Asst. Attys. Gen., Frank J. Kelley, Attorney General, Corrections Division, Frank J. Kelley, Attorney General, Tort Defense Division, Thomas C. Nelson, Asst. Atty. General, Lisa C. Ward, Lisa C. Ward Law Offices, Lansing, MI, for John Engler, Kenneth L. McGinnis, Dan L. Bolden, John Jabe, Pamela K. Withrow, John Hawley.

William L. Fette, Cornell, Dalzell, Fette, Ramey, et al., Kalamazoo, MI, for Michigan American Civil Liberties Union Foundation.

Elizabeth Alexander, Nat. Prison Project of the ACLUF, Washington, DC, for Nat. Prison Project of the American Civil Liberties Union Foundation.

Patricia Streeter, Detroit, MI, Michael Barnhart, Law Offices of Michael J. Barnhart, Detroit, MI, for Intervenors Everett Hadix, Richard Mapes, Patrick Sommerville, Rosevelt Hudson, Jr., Brent E. Koster, Lee D. McDonald, Darryl Sturges, William Lovett, James Covington, James Haddix.

George E. Pawlowski, Murray, Pawlowski & Flakne, L.L.P., Grand Rapids, MI, for Amicus Nat. Alliance for the Mentally Ill.

### *OPINION*

ENSLEN, Chief Judge.

This matter is before the Court on two motions. The first is the joint motion to dismiss portions of the Consent Decree at the Marquette Branch Prison and the Michigan Reformatory, filed June 10, 1996. The second is defendants' motion for immediate termination of the Consent Decree, pursuant to the Prison Litigation Reform Act ("PLRA" or "the Act"), Pub.L. No. 104–134, 110 Stat. 1321, amending 18 U.S.C. § 3626, filed June 11, 1996.

The complaint in this action was filed on January 18, 1984 pursuant to the Civil Rights of Institutionalized Persons Act of 1980, 42 U.S.C. § 1997. The Consent Decree was approved by this Court on July 13, 1984, and filed on July 16, 1984. The terms of the Consent Decree involve six broad areas, and twenty-eight specific areas, of prison conditions. Attached to the Consent Decree as exhibit A is the State Plan for Compliance, which sets forth the specifications for compliance.

The parties have agreed that certain portions of the Consent Decree have been complied with at the Marquette Branch Prison and the Michigan Reformatory. Terminating those portions of the Decree will decrease the number of issues that the Court will need to address under the PLRA standard. Therefore, the parties' joint motion will be considered first.

### I. Joint Motion to Terminate Portions of the Consent Decree

The parties move, pursuant to Rules 60(b)(5) and (6) of the Federal Rules of Civil Procedure, for dissolution of all of the remaining provisions of the Consent Decree applicable to the Marquette Branch Prison ("MBP"), which includes the Michigan Intensive Programming Center ("MIPC") because it has been merged into MBP, and the Michigan Reformatory ("MR"), with the exception of the provisions relating to medical and mental health care. These provisions involve sanitation, safety and hygiene; fire safety; crowding and protection from harm; access to the courts; and legal mail. Although the joint motion does not mention the issue of classification, based upon the exhibits on the classification system that were submitted with the motion, the Court understands the motion to include Section D.1 on page 6 of the Consent Decree, which requires the defendants to design and implement a professionally-based classification system.

Partial termination of the Consent Decree in this case is permitted by this Court's Order of July 2, 1992 approving a modification of the Consent Decree to that effect.

This modification was approved pursuant to a stipulation by the parties. The modification distinguishes the *USA* Decree from the Decree in *Hadix v. Johnson*, which contains language requiring compliance with all provisions prior to termination. In *Hadix*, the plaintiffs opposed a modification similar to that approved in *USA*, and the Court denied the modification. The Sixth Circuit Court of Appeals affirmed the decision in an Opinion dated September 20, 1995.

In the Opinion of July 2, 1992, this Court adopted a two-step termination process. First, the Court reviews compliance under the Plan and deletes provisions where it finds compliance. Then, the Court considers motions relative to provisions with which defendants have not complied, including arguments that full compliance is not necessary based on relevant constitutional standards. Pursuant to this process, the Court dismissed many of the State Plan sections applicable to MBP, MIPC, and MR.

The parties have filed, with their motion, a stipulation to the effect that the defendants have reached compliance with the State Plan in all of the areas for which they are requesting termination of the Decree, and declarations of various experts regarding the reviews of the prisons performed pursuant to the joint review process which was begun by the parties in August of 1995.

Based upon the stipulation of the parties and the declarations of the experts, and with the concurrence of the Independent Expert, this Court is satisfied that the provisions with regard to sanitation, safety and hygiene; fire safety; crowding and protection from harm; access to the courts; and legal mail should be deleted from the State Plan and Consent Decree as they apply to MBP, MR, and MIPC.

Defendants are required, by the Order of the Sixth Circuit Court of Appeals dated July 2, 1991, which was in regard to the defendants' duties under Section D.1 of the Consent Decree, to maintain their classification system over-ride rate at a general norm of 20 percent or less. Chart II of Exhibit 11 attached to the parties' motion indicates that defendants achieved compliance with this requirement at MR during 1993 and 1994, but

returned to a state of non-compliance in March 1995, a condition that apparently continues today. This Court is not prepared to delete this provision, as applicable to MR, based on the information presented in the joint stipulation. The Court is concerned about the continuing violation of the requirement, which involves placing high-risk prisoners with prisoners in lower classifications and in settings that do not meet the defendants' own standards for their secure confinement. The Court is also concerned about the capacity of defendants to maintain compliance once it is achieved.

The Court will therefore grant the parties' joint motion in part and deny it in part. The Consent Decree and the State Plan will be modified to reflect that the remaining provisions for sanitation, safety and health; fire safety; overcrowding and protection from harm; access to courts; and legal mail are deleted as they apply to MBP, MR, and MIPC, except that section D.1 of the Consent Decree remains applicable to MR.

## II. Motion to Terminate Pursuant to PLRA

Section 802 of the PLRA amends 18 U.S.C. § 3626, regarding appropriate remedies with regard to prison conditions. Section 3626(b) entitles a defendant or intervener in an action involving prison conditions to move for immediate termination of any prospective relief which was "approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right," unless the court makes such findings in writing as to the current conditions in the prisons subject to the decree. That section also provides for an automatic stay of any prospective relief that has already been approved or granted, beginning the 30th day after a motion for termination of that relief has been filed. The stay is to remain in effect until the court rules on the motion for termination of the relief.

Over the years, the Court has conducted numerous hearings, and issued numerous or-

ders regarding the rights and duties of the parties under the Consent Decree. Application of the PLRA to the Consent Decree in this case will require the Court to reconsider each provision of the Decree, the State Plan, and the associated plans and orders. The Court will have to determine whether, for each aspect of relief the defendants are providing or have been ordered to provide: the relief remains necessary to correct a current or ongoing violation of a Federal right; that any such relief extends no further than necessary to correct the violation of the Federal right; that it is narrowly drawn; and is the least intrusive means to correct the violation.

Such a determination in this case necessarily will involve thorough reviews of the extensive records on the various issues that have been raised, ruled on, and in most cases appealed, over the last twelve years. The parties should be given every opportunity to present their arguments to the Court. A hearing concerning the medical care issues in *Hadix v. Johnson* is scheduled for September 1996, and the Court will address the similar issues in the instant case after that hearing.[1] Hearings on the remaining issues will also need to be scheduled.

There is no possible way the Court could decide the motion to terminate the Consent Decree by July 10, 1996, when the PLRA provides that an automatic stay of all prospective relief that has been ordered throughout the years, pursuant to the consent decree, is to take effect. Aside from the complexity of the issues presented, the parties will not even have completed the briefing schedule that is set forth in the Rules by that date.

The automatic stay imposed by the PLRA would suspend many prior rulings in this case which found that the defendants have an obligation under the Consent Decree to provide some form of relief. The imposition of a stay would have a material impact on the status of this case. The scope of that impact, and the automatic process of imposition, raise constitutional issues that must be considered by this Court.[2]

The Court ordered the parties to brief the issue of the constitutionality of the automatic stay provision. However, arguments as to the invalidity of the provision that are nonconstitutional in nature must be considered first, and the constitutional issues should be addressed only if it is necessary to resolve the matter. *Jean v. Nelson*, 472 U.S. 846, 854, 105 S.Ct. 2992, 2996–97, 86 L.Ed.2d 664 (1985) (" 'Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.' ")

## A. Supersession of the Stay Provision

■ The amici argue that the automatic stay provision is not yet in force pursuant to the Rules Enabling Act ("REA"), 28 U.S.C. § 2071, *et seq.* The REA gives the Supreme Court authority to prescribe the rules of practice and procedure to be followed in the federal courts. Section 2072(b) provides that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Pursuant to the REA, the Supreme Court adopted what are now known as the Federal Rules of Civil Procedure on December 20, 1937.

The amici argue that the stay provision is in conflict with Rule 60(b), which provides that a motion for relief from judgment should be granted "[o]n motion and upon such terms as are just," and with Rule 62(b), which provides for a stay on a motion for a new trial or for judgment upon an exercise of

1. The Court had planned to hold one joint hearing on the medical care issues in both *Hadix v. Johnson* and *USA v. Michigan*, but the defendants objected and the Court therefore determined that holding a joint hearing would be counter-productive.

2. The parties were ordered to submit briefs no later than July 1, 1996 regarding the issue of the constitutionality of the stay provision. On July 1, 1996, the United States filed a motion for extension of the deadline for submitting its brief. The Court granted a one-day extension. On July 2, 1996, the Acting Solicitor General, Walter Dellinger, initiated a conference call with the attorneys and this Court to request a further extension. That request was denied, but the Court indicated that if the United States files a brief after this Opinion and Order are issued, it will be considered as a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The Court did receive briefs from the defendants as well as the *Knop* and *Hadix* amici.

discretion by the court. They argue that because the stay provision provides for an automatic, mandatory relief from judgment and a stay of the Court's orders, it is in conflict with the rules established by the Supreme Court, and thus pursuant to the supersession clause of the REA the provision does not take effect until and unless the Supreme Court amends the Rules.

The flaw in this argument is that the stay provision is not in direct conflict with either Rule 60(b) or 62(b). In cases where the supersession clause has been used to prevent the application of a statute, the effect of the statute would be to preclude application of the relevant Rule. *See, e.g., Cederbaums v. Harris,* 484 F.Supp. 125, 128 (S.D.N.Y.1980) (Rule of Appellate Procedure controls where it provides for a broader definition of "excusable neglect" than the applicable statute); *Griffith v. National Labor Relations Board,* 545 F.2d 1194, 1197 n. 3 (1976), *cert. denied,* 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 125 (1977) (where petition for review could be filed within 60 days after NLRB order under the applicable statute, but within a reasonable amount of time under the interpretation of the Rules of Appellate Procedure, petition filed within 79 days was timely).

Here, however, the Rules of Civil Procedure and the stay provision can coexist. The enforcement of the stay provision would not affect a court's authority to grant a relief from judgment or a stay in its discretion. Thus, it can not be said that the stay provision "conflicts irreconcilably" with the Federal Rules of Civil Procedure. *See, Henderson v. United States,* 517 U.S. 654, 661, 116 S.Ct. 1638, 1643, 134 L.Ed.2d 880 (1996).

Having resolved the only nonconstitutional argument for the invalidity of the automatic stay provision, the Court will address the constitutionality of the provision. Arguments that the PLRA is unconstitutional, other than those addressed below, were raised by the amici in their brief. Those arguments apply more generally to the constitutionality of the PLRA as a whole, rather than specifically to the stay provision. Presumably, if those arguments are valid and the PLRA is indeed unconstitutional, the stay provision would be included in such a

determination. However, because of the limited scope of the issue presently before the Court, the arguments addressing the constitutionality of the PLRA as a whole will not be addressed herein, and will be considered at a later time.

**B. The Stay Provision Encroaches Upon the Powers of the Judiciary**

Basic to the constitutional structure established by the Framers was their recognition that "The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." The Federalist No. 47, p. 300 (H. Lodge ed 1888) (J. Madison). To ensure against such tyranny, the Framers provided that the Federal Government would consist of three distinct Branches, each to exercise one of the governmental powers recognized by the Framers as inherently distinct. *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 57, 102 S.Ct. 2858, 2864, 73 L.Ed.2d 598 (1982).

The division among the Branches is preserved by our system of checks and balances. Where Congress passes a provision of law assigning power to one Branch, such that the authority and independence of another Branch is undermined, the provision should be struck down as contrary to the Constitution. *Mistretta v. United States,* 488 U.S. 361, 382, 109 S.Ct. 647, 660, 102 L.Ed.2d 714 (1989).

The function of the Judiciary is to "say what the law is" and to apply that law to the cases and controversies before it. U.S. Const. Art. III; *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). While Congress maintains authority to determine jurisdiction of the courts it has established, and to establish rules regarding the practice and procedure in the federal courts, the interpretation and application of the laws and the ultimate resolution of cases and controversies are solely within the province of the Judiciary. *Id.*

■ The Constitution "commands that the independence of the Judiciary be jealously guarded, and it provides clear institutional protections for that independence." *Northern Pipeline*, 458 U.S. at 60, 102 S.Ct. at 2865–66. When Congress enacts a rule which mandates the outcome of a case, such that the intervening step in which a court interprets and applies the rule on a case-by-case basis is effectively eliminated, Congress encroaches upon that power which has been reserved for the independent Judiciary. *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1872) (Congress can not "prescribe a rule for the decision of a cause in a particular way.")

■ When evaluating acts of Congress under an Article III standard, the court should not take a formalistic approach, but should consider a number of factors "with an eye to the practical effect that the congressional action will have on the constitutionally assigned role of the federal judiciary." *Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 851, 106 S.Ct. 3245, 3256–57, 92 L.Ed.2d 675 (1986). Among the factors which the Supreme Court has considered include the extent to which the non-Article III forum is exercising jurisdiction and powers that are "essential attributes of judicial power", the origins and importance of the rights that are at issue, and "the concerns that drove Congress to depart from the requirements of Article III." *Id.*

■ Examining these factors in the instant case, it is clear that through the stay provision of the PLRA, Congress has usurped a role that is exclusively judicial. The power to decide substantive issues of law, such as a motion to terminate the case, is a most basic attribute of the Judiciary's power under Article III. Through the stay provision, Congress automatically grants the movants relief, albeit temporarily, with no provision for a case-by-case determination.

This is akin to the issuance of a preliminary injunction, which even the court can not do without making a finding on the facts. *See, In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985) (Before issuing an injunction the court must consider: (1) the likelihood of plaintiff's success on the merits; (2) whether the plaintiff will suffer irreparable harm if an injunction is not issued; (3) whether the injunction would harm others; and (4) whether the injunction would serve the public interest.) [3]

Furthermore, the rights that are at issue in the instant case derive from the most sacred of sources, the Constitution. As noted by the parties, the provisions of the Consent Decree are intended to "assure the constitutionality of the conditions under which prisoners are incarcerated at the subject prisons." Consent Decree, ¶ 2. Unlike statutorily created rights, which Congress can create, modify, define, and terminate, Constitutionally created rights can not be abridged by an act of Congress. *Northern Pipeline,* 458 U.S. at 83, 102 S.Ct. at 2877–78.

The record does not provide information regarding the concerns which have caused Congress to provide for an automatic stay while the court considers the motion to terminate the Consent Decree. However, one can glean some congressional intent from the comment of one of the sponsors of the PLRA, who explained that its purpose is "to end frivolous lawsuits brought by prisoners, to remove our prisons from the control of Federal judges, and return control over them to our State and local officials." 142 Cong. Rec. S3703 (daily ed. April 19, 1996). While it is unquestionably true that Congress has the power to prospectively limit the jurisdiction of the federal courts, it is equally true that Congress lacks the power to invade the judicial province in cases and controversies in which the courts have rendered final judgment.

3. There is no doubt that Congress can provide for automatic stays in certain circumstances. *See, e.g.,* 11 U.S.C. § 362 (providing for an automatic stay of proceedings against a debtor when a bankruptcy petition is filed). However, such provisions preserve the status quo pending the court's decision. As noted above, the stay provision in question turns the status quo on its head, by suspending the relief that the plaintiffs have been deemed entitled to during the course of this litigation. In addition, it should be noted that Article I, Section 8, Clause 4 of the Constitution (the bankruptcy clause), when read in light of the history of bankruptcy law, gives Congress special powers to legislate in the area of bankruptcy law.

A consideration of the relevant factors leads to the conclusion that, through the stay provision of the PLRA, Congress attempts to perform a judicial function, and has therefore violated the doctrine of the separation of powers.

## C. The Stay Provision Alters a Final Judgment of the Court

The stay provision implicates the doctrine of the separation of powers in an additional way, because it alters a final judgment of a judicial court of the United States. The limitations of Congress' power to alter existing judgments of United States' courts was recently explained in *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). Therein, the Supreme Court considered a law (Section 476 of the Federal Deposit Insurance Corporation Improvement Act of 1991, 105 Stat. 2236) which "resurrected" previously dismissed cases under Section 10(b)(5) of the Securities Exchange Act of 1934 by imposing less strict limitations periods for such claims. Faced with this scenario, the Supreme Court declared the Act unconstitutional because it retroactively required Article III courts to re-open cases which they had already decided. *Id.* at 219–20, 115 S.Ct. at 1453.

▮ This conclusion derived from the *Plaut* Court's understanding that Article III, Section 1 was written, in part, for the express purpose of prohibiting Congress from undoing final judgments of the courts. *Id.* at 220–24, 115 S.Ct. at 1454–55. This analysis follows from Alexander Hamilton's own commentary on Article III, Section 1 to the effect that, "A legislature without exceeding its province cannot reverse a determination once made in a particular case; though it may prescribe a new rule for future cases." The Federalist No. 81, at 545 (J. Cooke ed.1961). Hence, under the *Plaut* Court's analysis, any law which retroactively affects a final judgment of a court of the United States is unconstitutional.

▮ In so holding, the *Plaut* Court limited this rule to final judgments wherein the right to appeal has been exhausted, waived or elapsed. *Id.* at 226–28, 115 S.Ct. at 1457. Such a holding is consistent with the general understanding of a final judgment as one which resolves all legal issues (except execution) and concerning which the rights of appeal have been either exhausted, waived or have elapsed. *Griffith v. Kentucky*, 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 712 n. 6, 93 L.Ed.2d 649 (1987); *Johnston v. Cigna Corp.*, 14 F.3d 486, 489 n. 4 (10th Cir.1993), *cert. denied*, 514 U.S. 1082, 115 S.Ct. 1792, 131 L.Ed.2d 720 (U.S.1995); *Plaut v. Spendthrift Farm, Inc.*, 1 F.3d 1487, 1500 (6th Cir.1993)(Keith, J., concurring), *aff'd*, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995).

▮ In the present case, the judgment in question is a consent decree relating to prison conditions. According to the Supreme Court,

[a] consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in and be enforceable as a judicial decree that is subject to the rules generally applicable to other judgments and decrees.

*Rufo v. Inmates of Suffolk Jail*, 502 U.S. 367, 378, 112 S.Ct. 748, 757, 116 L.Ed.2d 867 (1992). One of these rules is the rule relating to the finality of judgments. Thus, where appeals have been exhausted or the time for appeal has elapsed or been waived, consent decrees become final judgments. *See Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 590, 104 S.Ct. 2576, 2594, 81 L.Ed.2d 483 (1984)(Stevens, J., concurring); *Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir.), *cert. denied*, 506 U.S. 827, 113 S.Ct. 86, 121 L.Ed.2d 49 (1992). In this case, there is little doubt that the Consent Decree has become final by waiver of appeal since it provides that it is the judgment of the Court as to those issues addressed within.

Defendants' contention that the Consent Decree is not a final judgment is in error. They cite to *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1855), for the proposition that Congress may modify the prospective effect of injunctive relief ordered by an Article III

court. However, in that case the Supreme Court distinguished the situation from those in which an act of Congress affects a final adjudication of the private rights of parties because the right of navigation that was involved was a "public right common to all." *Id.* at 431. Constitutional rights, which are the rights at issue in the instant case, unlike those in *Wheeling Bridge,* are private. *See, Rose v. City of Los Angeles,* 814 F.Supp. 878, 881 (C.D.Cal.1993). Furthermore, the fact that a court may alter a final judgment, *see Rufo, supra,* does not affect the finality of the judgment, nor does it affect the inability of Congress to do so. *See, Plaut,* 514 U.S. at 222–24, 232–34, 115 S.Ct. at 1455, 1460.

■ Thus, the question becomes whether the automatic stay provision of the PLRA, which stays the enforcement of the Consent Decree, impermissibly and retroactively modifies a final judgment of the court. The Court finds that, like the statute in *Plaut,* the PLRA renders inoperative existing judgments of this Court. The distinction that it renders existing judgments unenforceable only temporarily is not significant. This only relates to the extent to which the Act impermissibly modifies existing judgments, not the fact that it operates to do so. Likewise, the fact that the Act depends on the filing of a motion by a litigant does not distinguish this case significantly from *Plaut.* The PLRA invites the very act of filing the motion by promising the suspension of relief without a prior judicial determination. In the same way, the modification of existing judgments involved in *Plaut* would not have been effective without the filing of motions for reinstatement by the plaintiffs. Nevertheless, the *Plaut* Court struck down the law because " 'the law before us embodies risks of the very sort that our Constitution's "separation of powers" prohibition seeks to avoid.' " *Plaut,* 514 U.S. at 239–41, 115 S.Ct. at 1463 (quoting Breyer, J., concurring).

As the Supreme Court said in *Plaut:*

[T]he separation of powers is a structural safeguard rather than a remedy to be applied only when specific harm, or risk of specific harm can be identified. In its major features (of which the conclusiveness of judicial judgments is assuredly

one) it is a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict.

*Id.* These same high walls prohibit legislation of this type—which has the effect of invalidating final judgments of this or any Court, including the Sixth Circuit Court of Appeals, which has made numerous constitutional rulings in this and other prison cases.

## D. The Stay Provision Violates the Due Process Clause

Even assuming the PLRA stay provision did not violate the separation of powers doctrine, it nevertheless violates the vested rights doctrine, which is grounded in the Due Process Clause of the Fifth Amendment.

■ Congress may not enact a statute which abrogates vested property rights without due process. U.S. Const. Amend. V.; *Landgraf v. USI Film Products,* 511 U.S. 244, 265–67, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994). A judgment that has become final is a type of property right that is subject to this rule. *State of Louisiana, ex rel. Folsom v. Mayor and Administrators of the City of New Orleans,* 109 U.S. 285, 291, 3 S.Ct. 211, 215–16, 27 L.Ed. 936 (1883) (Bradley, J., concurring) (A judgment "is as much an article of property as anything else that a party owns."). This doctrine was clearly stated by the Supreme Court in 1898, when it declared:

It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases.

*McCullough v. Virginia,* 172 U.S. 102, 123–24, 19 S.Ct. 134, 141–42, 43 L.Ed. 382 (1898). *See also, Hodges v. Snyder,* 261 U.S. 600, 603, 43 S.Ct. 435, 436, 67 L.Ed. 819 (1923) ("the private rights of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation"); *Memphis v. United States,* 97 U.S. (7

Otto) 293, 296, 24 L.Ed. 920 (1877) (a judgment confers vested rights which are "secure against legislative invasion").

■ Due process requires, at the very least, notice and an opportunity to be heard before there is a deprivation of property. *Armstrong v. Manzo,* 380 U.S. 545, 550, 85 S.Ct. 1187, 1190–91, 14 L.Ed.2d 62 (1965). The determination as to what process is sufficient requires analysis of the private interest that will be affected, the risk of erroneous deprivation through the procedures used, the value of procedural safeguards, and the government's interest. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

■ As explained above, *see* Section C, *supra,* the Consent Decree in this action constitutes a final judgment of this Court. The United States is entitled to hold the same property rights, and may resort to the same remedies, as a private person. *Rex Trailer Co. v. United States,* 350 U.S. 148, 151, 76 S.Ct. 219, 221, 100 L.Ed. 149 (1956). Hence, the plaintiff has a constitutionally protected property right in that consent judgment. *See Johnston,* 14 F.3d at 492–93. The stay provision of the PLRA takes from plaintiff its vested right in the judgment, which it has had since 1984, without due process. The mere filing of a motion under the PLRA automatically suspends of its own force the operation of a final judgment after 30 days. In light of the clear law prohibiting such abrogations of vested rights, the stay provision can not be found to be constitutional.

## CONCLUSION

For the foregoing reasons, the joint motion to dismiss portions of the Consent Decree at the Marquette Branch Prison and the Michigan Reformatory is granted in part and denied in part. Furthermore, this Court finds the stay provision located in § 802 of the Prison Litigation Reform Act, 18 U.S.C. § 3626(e), to be unconstitutional. Therefore, the prospective relief that has been awarded to the plaintiff pursuant to the Consent Decree of the parties will not be stayed pending this Court's consideration of the defendants' motion to terminate the Consent Decree.

## ORDER

**IT IS HEREBY ORDERED** that the joint motion of the United States and the State of Michigan to dismiss portions of the Consent Decree at the Marquette Branch Prison and the Michigan Reformatory, filed June 10, 1996 (dkt.# 2046) is **GRANTED in part** and **DENIED in part;**

**IT IS FURTHER ORDERED** that the Consent Decree and State Plan are modified to reflect that the remaining provisions for sanitation, safety and health; fire safety; overcrowding and protection from harm; and access to courts and legal mail are **deleted** as they apply to Marquette Branch Prison, the Michigan Intensive Programming Center, and the Michigan Reformatory, except that section D.1 of the Consent Decree remains applicable to the Michigan Reformatory;

**IT IS FURTHER ORDERED** that the automatic stay provided for in the Prison Litigation Reform Act is **unconstitutional**, and will therefore not take effect pending this Court's decision on defendants' motion to terminate the Consent Decree.