Randy JENSEN, et al., Plaintiffs,

v.

COUNTY OF LAKE, et al., Defendants.

No. H–74–230.

United States District Court,
N.D. Indiana,
Hammond Division.

March 5, 1997.

Ivan Bodensteiner, Valparaiso, IN, for Plaintiffs.

John Dull, Crown Point, IN, Gerald M. Bishop, Merrillville, IN, John P. Bushemi, Merrillville, IN, for Defendants.

## *ORDER*

LOZANO, District Judge.

This matter is before the Court on the Motion to Terminate Consent Decree and Judgment Order filed by Defendants, Lake County Council and Lake County Board of Commissioners, on December 4, 1996. For the reasons set forth below, the Court takes the motion **UNDER ADVISEMENT.**

### *BACKGROUND*

This lawsuit was filed in 1974 on behalf of the inmates of the Lake County Jail. The suit challenged the policies and procedures at the Lake County Jail and alleged several Eighth Amendment and Fourteenth Amendment violations. Specifically, Count One of the amended complaint claimed that Defendants had violated Plaintiffs' rights by denying them necessary medical treatment; Count Two claimed that the Plaintiffs had been subjected to violence, beatings, and recurrent threats from Defendants' agents and employees; and Count Three alleged that Plaintiffs had been subjected to violence, beatings, and recurrent threats from other inmates without protection from the Defendants. Count Three also alleged the existence of physical conditions at the Lake County Jail which were dangerous to prisoners.

On October 21, 1980, the parties avoided trial by agreeing to a consent decree entered by this Court. Two years later the Plaintiffs charged that Defendants were in contempt of court because they had not complied with the consent decree. Defendants admitted that they had not complied. The parties then entered into a broader and more detailed agreement regarding jail improvements. Such agreement is encompassed in the judgment order of June 28, 1982. That judgment order has been modified by the Court on several occasions upon request.

Throughout the years this Court has maintained continuing supervision over the operation of the Lake County Jail in order to enforce the consent decree of 1980 and the judgment order of 1982. Pending before the Court in addition to this motion to terminate are several motions, including Plaintiffs' Motion to Show Cause and Appointment of Other Monitor, filed on May 31, 1994, and Defen-

dants' motion to declare the consent decree and the judgment order satisfied filed on October 17, 1994.

In April 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321–66(1996). The Act was enacted in part in response to criticisms that the federal courts had overstepped their authority in prison condition cases. *See Benjamin v. Jacobson,* 935 F.Supp. 332, 340 (S.D.N.Y.1996). The Act aims at maintaining the supervision and control of state prisons in the hands of municipal and state governments. *Id.* In order to do this, the Act includes provisions that make it easier for those running state and local prisons to seek termination of federal court orders relating to prison conditions. *See Small v. Hunt,* 98 F.3d 789, 794 (4th Cir.1996). In light of the new Act, Defendants, Lake County Council and Lake County Board of Commissioners, have filed a motion to terminate the consent decree and judgment order. Because of the effect of the Act in the outcome of prison reform cases, and because the Court's ruling in this motion will affect other pending motions, the Court must decide whether the PLRA applies to the case at hand.

### *DISCUSSION*

The PLRA, which amended Title 18 U.S.C. section 3626 on appropriate remedies with respect to prison conditions, requires that

> [p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct a violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). Congress stated explicitly that the amendment shall apply to all prospective relief even if originally granted before the enactment of the Act. *See* 18

U.S.C. § 3626 note on effective date. Defendants can ask the courts to apply the Act to older cases through section 3626(b) which provides for

> [i]mmediate termination of prospective relief—in any civil action with respect to prison conditions, a defendant or intervenor shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3622(b)(2). The next section provides the following limitation to immediate termination:

> Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current or ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

18 U.S.C. § 3626(b)(3). Prospective relief refers to "all relief other than compensatory money damages," 18 U.S.C. § 3626(g)(7), and it includes relief awarded through consent decrees. 18 U.S.C. §§ 3626(c)(1), 3626(g)(9).

The Defendants in this case ask the Court to terminate the consent decree and judgment order pursuant to 18 U.S.C. § 3626(b). Plaintiffs respond that section 3626(b) is unconstitutional.

The courts that have interpreted section 3626(b) have reached different conclusions as to their constitutionality. *See Plyler v. Moore,* 100 F.3d 365 (4th Cir.1996) (finding section 3626(b) constitutional); *Benjamin v. Jacobson,* 935 F.Supp. 332 (S.D.N.Y.1996) (same); *but see Hadix v. Johnson,* 947 F.Supp. 1100 (E.D.Mich.1996) (holding sec-

tion 3626(b) unconstitutional); *Gavin v. Ray,* No. 4–78CV70062, 1996 WL 622556 (S.D.Iowa, Sept. 18, 1996) (same); see *also Hadix v. Johnson,* 933 F.Supp. 1360 (E.D.Mich.1996) (finding section 3626(e)(2) unconstitutional); *Hadix v. Johnson,* 933 F.Supp. 1362 (W.D.Mich.1996) (same).[1] Another court applied the section narrowly by terminating only the specific enforcement of prospective relief. *See Inmates of Suffolk Cty. Jail v. Sheriff of Suffolk Cty,* No. Civ. A. 71–162, 1997 WL 2474 (D.Mass. January 2, 1997) (stating that the court found this section constitutional only if it applied a section in such a narrow way). Most, if not all, of the rulings by the district courts have been appealed.

The Court now evaluates the constitutionality of section 3626(b) only and it expresses no opinion as to the constitutionality of other sections in the PLRA, including the automatic stay provision, section 3626(e)(2). Neither will the Court address other possible statutory or constitutional attacks against this section which the Plaintiffs did not raise in their briefs. The Court concludes that section 3626(b) is constitutional as it applies in this case.

## A. Separation of Powers

The Plaintiffs first argue that the section is unconstitutional because it constitutes an invasion by Congress into the powers of the judiciary in contravention with the separation-of-powers doctrine. Plaintiffs argue that through the PLRA Congress directs the reopening of a final judgment and that the Act deprives the Court of the power to supervise compliance with an order of the Court. The Defendants, on the other hand, argue that the separation-of-powers doctrine does not apply because the consent decree and judgment order are executory, not final, judgments.

▮ The Constitution assigns separate spheres of powers to separate branches. Article III of the Constitution assigns to the

---

1. Section 3626(e)(2) stays prospective relief automatically 30 days after a motion to terminate has been filed, pending the decision of the court. Although *Hadix,* 933 F.Supp. 1360 (E.D.Mich.) and *Hadix,* 933 F.Supp. 1362 (W.D.Mich.) only

considered the constitutionality of section 3626(e)(2), the analyses in those cases offer insight on a constitutional challenge to section 3626(b).

federal judiciary the power to rule on and decide cases. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218–19, 115 S.Ct. 1447, 1453, 131 L.Ed.2d 328 (1995). If Congress passes a law that assigns to a different branch of government the powers of the judiciary, so that the authority and the independence of the judiciary are undermined, such act is unconstitutional. *Hadix*, 933 F.Supp. at 1366 (W.D.Mich.). "While Congress maintains authority to determine the jurisdiction of the courts it has established, and to establish rules regarding the practice and procedure of the federal courts, the interpretation and application of the laws and the ultimate resolution of case and controversies are solely within the province of the Judiciary." *Id.*

■ "Once the Article III court issues a final judgment, that judgment may not be altered by retroactive legislation." *Benjamin*, 935 F.Supp. at 344. "Article III ... was written, in part, for the express purpose of prohibiting Congress from undoing the final judgments of the courts." *Hadix*, 933 F.Supp. at 1367 (W.D.Mich.) (citing *Plaut*, 514 U.S. at 222–24, 115 S.Ct. at 1454–55). When Congress passes legislation that mandates the courts to reopen or annul final judgments, or that requires its own application in a case already finally adjudicated, Congress violates the principles embodied in Article III. *Plaut*, at 219–20, 223–25, 115 S.Ct. at 1453, 1455–56.

■ The Supreme Court has stated that "a consent decree is a final judgment that may be reopened only to the extent that equity requires." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 391, 112 S.Ct. 748, 764, 116 L.Ed.2d 867 (1992). As final judgments, consent decrees are subject to the rules generally applicable to other judgments and decrees. *Id.* at 378, 112 S.Ct. at 757. As such, once a consent decree is final, Congress cannot enact laws reopening or undoing the decree.

■ Nonetheless, because of the prospective nature of the relief embodied in consent decrees, the two courts that have decided that section 3626 is constitutional have held that such consent decree judgments are not final for separation-of-powers analysis. *See Plyler*, 100 F.3d at 371; *Benjamin*, 935 F.Supp. at 345. Although these courts recognized that judgments at law are immune to subsequent changes of law, they concluded that judgments providing for injunctive relief remain subject to such changes. *Plyler*, 100 F.3d at 371. In such cases, "Congress may legislate retroactively so as to modify the prospective effects of a judgment that is final for appeal purposes because it does not reopen the merits of the judgment." *Benjamin*, 935 F.Supp. at 346.

In contrast, the *Hadix* court in the Western District of Michigan decided that the finality of the judgment depends on the right to appeal. 933 F.Supp. at 1368. Once the time for appeal has been exhausted, waived, or elapsed, the judgment is final and cannot be opened by congressional enactment. *Id.*; *see also Gavin*, 1996 WL 622556 at *3–4.

In *Plaut*, the Supreme Court reviewed a statute that required the courts to reopen cases that had been dismissed on statute of limitation grounds even when those cases were no longer pending on direct review. The Court held that the statute was unconstitutional based on the separation-of-powers doctrine. The *Plaut* Court, however, intimated that its holding did not apply to prospective relief. *See Plaut*, 514 U.S. at ——, 115 S.Ct. at 1461. The Court stated that "Congress will undoubtedly enact prospective legislation permitting, or indeed requiring, this Court to make equitable exceptions to an otherwise applicable rule of finality, just as district courts do pursuant to Rule 60(b)."[2]

2. Historically, courts of equity have had the power to modify injunctions in light of changed circumstances. *Benjamin*, 935 F.Supp. at 346 (citing 11 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2863, at 336 (2d ed.1995)). Federal Rule of Civil Procedure 60(b)(5) codifies this power of the courts whereby a court can relieve a party from a judgment if "it is no longer equitable that the judgment should have prospective application." *See also Plaut*, 514 U.S. at ——, 115 S.Ct. at 1461. Circumstances prompting the modification of a judgment include not only factual but also legal changes. *Komyatti v. Bayh*, 96 F.3d 955, 962 (7th Cir.1996); *see also Rufo*, 502 U.S. at 391, 112 S.Ct. at 763 (stating that the courts should agree to modify decrees detrimental to the public interest). Although all types of final

*Id.* at 237–38, 115 S.Ct. at 1462. The Court also added that its holding in Plaut did not call into question decisions which upheld legislation that altered the prospective relief of injunctions entered by Article III courts, such as in *Pennsylvania v. Wheeling & Belmont Bridge Co.,* 59 U.S. 421, 18 How. 421, 15 L.Ed. 435 (1855). *Id.* at 231, 115 S.Ct. at 1459.

In *Wheeling,* Pennsylvania obtained an injunction against the defendant when the Supreme Court declared that the defendant's bridge was an obstruction to navigation. The Court ordered the defendant to either remove or elevate the bridge. Several years later, Pennsylvania brought enforcement procedures for noncompliance, but after the injunction had been issued, Congress had passed a law which specifically authorized the bridge in this case. 59 U.S. at 429.

The Supreme Court refused to enforce the injunction. The Court acknowledged that Congress does not have the power to annul judgments, adding that "[w]hen [the private rights of parties] have passed into judgment, the right becomes absolute, and it is the duty of the court to enforce it." 59 U.S. at 431. Nonetheless, the Court went on to hold:

> [I]f the remedy in this action had been an action at law, and a judgment rendered in favor of the plaintiff for damages, the right to these would have passed beyond the reach of the power of congress. It would have depended, not upon the public right of the free navigation of the river, but upon the judgment of the court ... But that part of the decree, directing the abatement of the obstruction, is executory, a continuing decree ... [W]hether [the bridge] is a future existing or continuing obstruction depends upon the question of whether or not it interferes with the right of navigation. If ... since the decree, this right has been modified by the competent authority, so that the bridge is no longer an unlawful obstruction, it is quite plain

that the decree of the court cannot be enforced.

59 U.S. at 431.

In *System Fed'n No. 91 v. Wright,* 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961), the lower court entered a consent decree in which it applied earlier law to enjoin a union from requiring railroad employees to join the union. The lower court refused to modify the decree after the law changed. On appeal, the Supreme Court held that the injunction should be modified. The Court stated that "the court cannot be required to disregard significant changes in law or facts if it is 'satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong.'" *Id.* at 647, 81 S.Ct. at 371. The fact that the judgment in that case arose from a consent decree as opposed a litigated decree made no difference in the Court's consideration. *Id.* at 650–651, 81 S.Ct. at 372–373. "The parties have no power to require the court continuing enforcement of rights that the statute no longer gives." *Id.* at 652, 81 S.Ct. at 373.

Similarly in *Western Union Tel. Co. v. Int'l Bhd. of Elec. Workers, Local Union 134,* 133 F.2d 955 (7th Cir.1943), the district court had enjoined a union from engaging in activities considered illegal under earlier antitrust laws. When an act of Congress and several Supreme Court decisions established that such conduct was legal, the union moved for a modification of the injunction. The district court granted the modification and the employer appealed. The Seventh Circuit stated that:

> [t]he decree ... is executory and continuing...; it is permanent in the sense that it enjoins a party from doing that which he has no legal or equitable right to do. When, however, its continuance is no longer warranted, equity procedure assures opportunity for modifying and adjusting it to a particular situation in a court with a settled practice of equity, and though a decree may be final as it relates to an appeal and all the matters included or

judgments are subject to modification by the courts, decrees in institutional reform litigation are more likely to be targets of modification efforts because such decrees remain in place for

extended periods of time and it is more likely that significant changes will occur during the life of the decree. *See Rufo,* 502 U.S. at 380, 112 S.Ct. at 758.

embodied in such step, yet, where the proceedings are of a continuing nature, it is not final, and the injunctions will be vacated or modified where the law has been changed making acts enjoined illegal.

... "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need."

133 F.2d at 957 (citations omitted). The appellate court affirmed the district court's decision.

The difference between cases like *Wheeling* and *Western Union*, and the case at hand is that in those cases the changing law affected the substantive rights of the parties whose conduct was governed by the injunction.[3] Certain conduct was illegal and thereby prohibited by the injunction; after the new law, such conduct became legal and the court modified the injunction accordingly.

■ In the case at hand, Congress cannot simply modify the underlying substantive law because such law is dictated by the Constitution, in the Eighth and Fourteenth Amendments. What Congress has done through the PLRA is modify the authority of the court to award relief greater than that required by federal law. *Plyler*, 100 F.3d at 372. In enacting the PLRA, Congress changed the law governing the district courts' remedial power. *Benjamin*, 935 F.Supp. at 350. "Prior to the PLRA, a court could enter a consent judgment as long as it is within the court's subject matter jurisdiction, comes generally within the scope of the pleadings, and furthers the objective of the law upon which the complaint is based." *Id.; see also Komyatti v. Bayh*, 96 F.3d 955, 959 (7th Cir.1996) (stating that under pre-PLRA standards, consent decrees could embody conditions beyond those imposed by the Constitution itself, as long as the conditions were related to the elimination of constitutional violations). In contrast, when entering a litigated judgment, the courts could not order local governments to take a course of conduct not tailored to cure a constitutional violation. *Benjamin*, 935 F.Supp. at 350. What the

PLRA does is impose the same limits to consent judgments as to litigated judgments. *See id.; but see Hadix*, 947 F.Supp. at 1109 (concluding that the PLRA alters not the prospective relief but the consent judgment itself, thereby exceeding the limit of congressional authority). Now courts cannot award relief greater than what is necessary to protect federal rights, even if the parties agree to it.

Congress can impose conditions that limit the power of inferior courts to enter injunctive relief, *see Lauf v. E.G. Shinner & Co.*, 303 U.S. 323, 330, 58 S.Ct. 578, 581, 82 L.Ed. 872 (1938); *see, e.g., Western Union*, 133 F.2d at 958 (where the Norris–LaGuardia Act limited the power of federal courts to grant injunctions in labor dispute cases) Accordingly, there is no doubt that Congress can modify the power of the courts this way as to future and pending prison reform cases. The only issue is whether the courts' power can be limited in cases such as this one.

■ The determinative question in deciding whether applying this limitation to older cases violates the separation-of-power doctrine, is whether the fact that Congress modifies the remedial powers of the court as opposed to the substantive law defining the rights of the parties, is a meaningful distinction between this case and the *Wheeling* and *Western Union* cases. The Court concludes that it is not.

While the Court agrees that consent decrees are final judgments, the case law supports the conclusion that judgments imposing prospective relief, such as the orders in the case at hand, are subject to modification in equity by the courts in light of new circumstances. Section 3626 just provides an alternative mechanism to Rule 60(b) under which a defendant can ask for revision of a judgment in prison reform cases. *See Benjamin*, 935 F.Supp. at 334; *Hadix*, 933 F.Supp. at 1365 (W.D.Mich.); *Gavin*, 1996 WL 622556 at *2; *see also Komyatti*, 96 F.3d at 961 (suggesting in dicta that the PLRA may be an equitable ground that warrants altering a

---

**3.** Although the *Hadix* court, 933 F.Supp. at 1362 (W.D.Mich), distinguished *Wheeling* from a challenge to section 3626(b) on the ground that in

*Wheeling* the act of Congress targeted public as opposed to private rights, neither *System Fed'n No. 91* nor *Western Union* involved public rights.

consent decree) It is important that section 3626 does not mandate the courts to terminate cases without review by the courts. The section only establishes the standards to follow; the court itself, and not Congress, determines whether a constitutional violation exists and what is necessary to remedy such violation. *See Plyler,* 100 F.3d at 372. When modifying the decree, though, the court should consider that the PLRA is an expression of congressional determination that decrees that exceed the limit of constitutional requirements are detrimental to the public interest. *Cf. Rufo,* 502 U.S. at 391, 112 S.Ct. at 763 (stating that the courts should agree to modify decrees detrimental to the public interest).

■ Although section 3626 gives the court the power to terminate the decree, the court should not do so if it finds ongoing constitutional violations. In such case, prospective relief should continue but narrowly tailored in accordance with the now limited remedial powers of the court. *See* 18 U.S.C. § 3626(b)(3). *Cf. Rufo,* 502 U.S. at 389, 112 S.Ct. at 762 (stating that under pre-PLRA law, when a court modifies a consent decree the court should not rewrite it to the constitutional floor). Therefore, the PLRA does not affect the power of the Court to enforce federal rights and to remedy the violation of those rights as the Constitution might require.

■ As the *Hadix* court, 947 F.Supp. at 1108 (E.D.Mich.), points out, the PLRA makes futile the careful negotiations that have gone into crafting a consent decree, the parties' strategy to save time and effort litigating the case, and the compromises made in exchange for giving up risk. The fact that Congress can alter prospective relief in such matters may decrease the utility of consent decrees and the parties' willingness to enter into one. Nonetheless, as the court in *Benjamin,* 935 F.Supp. at 337, stated, it is not for the courts to determine the wisdom of Congress in enacting the statute.

**B. Equal Protection**

■ The Plaintiffs also argue that the law violates the Equal Protection Clause. In an equal protection challenge the court presumes that the legislation is valid and will uphold the statute if the classification that the act draws is rationally related to a legitimate purpose. *Plyler,* 100 F.3d at 373. If, however, the law targets a suspect class, or burdens the exercise of a fundamental right, strict scrutiny applies and the court will uphold the statute only if it is narrowly tailored to serve a compelling government interest. *Id.*

Plaintiffs in this case do not argue that section 3626(b) imposes classifications based on a suspect class or that the legislation burdens the exercise of fundamental rights. Rather, Plaintiffs argue that the statute does not serve any legitimate purpose.

■ Legislation that does not impose classifications based on suspect class or which does not burden the exercise of fundamental rights is accorded a strong presumption of validity. *Plyler,* 100 F.3d at 373. The challenger has the burden of disproving the existence of every possible basis that might support the legislation. *Id.; Benjamin,* 935 F.Supp. at 353. "Once [the court] ha[s] determined that there exists a plausible reason for the congressional action—and regardless of whether that reasoning actually motivated Congress—our inquiry is at end." *Plyler,* 100 F.3d at 374.

■ The PLRA was prompted by criticism that the federal courts have overstepped their authority in overseeing prison reform litigation. The PLRA now attempts to return control of the prisons to state and municipal bodies which are democratically accountable as soon as court supervision becomes unnecessary to remedy a demonstrated ongoing constitutional violation. *Benjamin,* 935 F.Supp. at 354.

The *Plyler* court found that Congress has a legitimate interest in preserving state sovereignty from overzealous supervision by the federal courts in the area of prison conditions litigation. 100 F.3d at 374. Section 3626(b) is rationally related to that purpose because it forbids court supervision that goes beyond what is necessary to enforce federal law. PLRA is also rationally related to Congress' concern that the federal courts are engaged

in enforcing decrees for years and years to provide relief beyond what the Constitution requires.

Plaintiffs argue that federalism is not a rational basis for the legislation as it applies to consent decrees because federalism is not a concern when states and local governments voluntarily entered into a consent decree. While it is true that Defendants in this case agreed to the entry of the decree and judgment order, the Court doubts seriously that the Defendants foresaw being under supervision of the courts 15 years later, 23 years after the filing of this suit. Never-ending supervision of the courts in prison reform cases was one of the concerns of Congress in enacting the PLRA. Regardless of the state and local governments, willingness to subject themselves to federal control, Congress can determine by itself that it is best to limit federal as well as judicial intervention (as the Act applies to state courts) in state and local prison management.

C. Impairment of Contract

■ The Plaintiffs also argue that the PLRA retroactively deprives them of the benefit of the agreement entered into by the parties. Whether a consent decree can be considered a contract for the purpose of legal analysis is unclear. The Supreme Court has recognized that a consent decree embodies an agreement of the parties and "thus in some respects is contractual in nature." *Rufo,* 502 U.S. at 378, 112 S.Ct. at 757. At the same time, the Court has also emphasized the nature of the consent decree as a judgment, not a contract. *Id.; see also Local No. 93 v. City of Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 3073, 92 L.Ed.2d 405 (1986) ("[C]onsent decrees 'have attributes of both.contracts and of judicial decrees,' a dual character that has resulted in different treatment for different purposes.").

In *Nat'l R.R. Corp. v. Atchison, Topeka & Santa Fe Ry. Co.,* 470 U.S. 451, 472, 105 S.Ct. 1441, 1455, 84 L.Ed.2d 432 (1985) (citations omitted), the Court used the following test to review an impairment of contract claim:

To prevail on a claim that federal economic legislation unconstitutionally impairs a private contractual rights, the party complaining of unconstitutionality has the burden of demonstrating, first, that the statute alters contractual rights or obligations. If an impairment is found, the reviewing court next determines whether the impairment is of constitutional dimension. If the alteration of contractual obligations is minimal, the inquiry may end at this stage; if the impairment is substantial, a court must look more closely at the legislation. When the contract is a private one, and when the impairing statute is a federal one, this next inquiry is especially limited, and the judicial scrutiny quite minimal. The party asserting a ... violation must overcome a presumption of constitutionality and establish that the legislature has acted in an arbitrary and irrational way.

*See also Benjamin,* 935 F.Supp. at 357.

Assuming that a consent decree is a contract for the purpose of an impairment of contract argument, and applying the test described in *National Railroad Corporation,* the Court rejects Plaintiffs' argument. As explained above when discussing equal protection, Congress did not act irrationally or arbitrarily when it enacted the Act.

The Plaintiffs argue that the *National Railroad Corporation* test does not control because that case involved federal economic legislation while here, the PLRA affects a contract whereby the parties attempt to remedy constitutional violations. The PLRA, however, does not affect the rights of the party to negotiate an agreement on the best way to remedy the constitutional violation. What the Act restricts is an agreement that imposes obligations on the Defendant that go beyond what the Constitution requires, and thereby beyond what the court can enforce.

D. Motion to Terminate

■ Because the Court finds that section 3626(b) as applied to the case at hand is constitutional, the Court now considers Defendants' motion to terminate. As most, if not all, consent decrees entered before the PLRA, the consent decree and judgment order in this case do not conform to the standards established in section 3626(b)(2).

Those orders were approved by the Court without findings that the relief was narrowly drawn, extended no further than necessary to correct the violation of federal rights, and was the least intrusive means necessary to correct the violations. Accordingly, the Defendants appear to be entitled to termination of the prospective obligations imposed by the consent decree and judgment order.[4]

This, however, does not conclude the Court's inquiry. Section 3626(b)(3) provides that the Court shall not terminate prospective relief if it finds that such relief remains necessary to correct ongoing violations and imposes only narrowly tailored relief. Here, the Plaintiffs argue that there are ongoing constitutional violations because the overcrowding problem in the jail is so serious that it leads to unconstitutional conditions. Defendants respond that the Court should not consider conditions caused by overcrowding because jail overcrowding is not per se a constitutional violation and overcrowding was not an issue in the original lawsuit which gave rise to the present judgment order and consent decree.

As Defendants state, overcrowding by itself is not a violation of the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Nonetheless, if overcrowding leads to deprivation of food, proper sanitation, or medical care, or when it is accompanied by dangerous conditions, it may amount to cruel and unusual punishment. *See id.* (noting that in that case overcrowding did not lead to deprivation of food, sanitation, or medical care, or to an increase in violence); *Jensen v. Clarke*, 94 F.3d 1191, 1195 (8th Cir.1996) (finding that overcrowding created a substantial risk of harm to the inmates when the jail assigned them to cells randomly de-spite the threat posed by violent prisoners to their cellmates); *Strickler v. Waters*, 989 F.2d 1375, 1382 (4th Cir.1993) (stating that although overcrowding per se is not unconstitutional, it violates the Constitution if it results in the prisoners being denied of identifiable human needs).

Plaintiffs in this case do not complain simply of overcrowding. According to Plaintiffs, the conditions are such that fights and injuries to inmates are common and that it is very difficult for the jail personnel to ensure the safety of the inmates housed at the jail. In other words, that Defendants are subjecting the Plaintiffs to dangerous conditions.

The Court also disagrees with Defendants' representation that the original lawsuit did not address overcrowding, and therefore that the Court should no consider overcrowding now. As Defendants themselves point out, overcrowding is not a constitutional issue and the complaint does not allege overcrowding. What the complaint does allege is that the conditions in the prison are such that the Plaintiffs are subject to violence and beatings from their fellow inmates from which the Defendants cannot protect them. It appears to the Court that these are the same conditions which Plaintiffs now complain are caused by overcrowding. The Court therefore concludes that lack of safety and dangerous conditions caused by overcrowding are within the scope of the suit and if such conditions do not meet the constitutional minimum, the Court is not in a position to terminate all relief in this case.

At a hearing, the Plaintiffs will have the opportunity to show whether ongoing constitutional violations exist at the Lake County Jail. If such conditions exist, the Court will then have to determine what relief is narrowly drawn and least intrusive, as well as suffi-

---

**4.** As the *Inmates of Suffolk Cty. Jail* court, 1997 WL 2472 at *6, this Court does not believe that the PLRA requires the Court to vacate orders that do not comply with section 3626 standards. It only requires the Court to modify the orders by terminating prospective obligations imposed by the orders. The judgment as such remains intact. As the *Inmates of Suffolk Cty. Jail* court, if the law required the court to vacate the entire judgment, this Court may not have found the Act constitutional. Unlike the *Inmates of Suffolk Cty. Jail* court, this Court does not believe that sec-tion 3626(b)(2) only requires termination of specific performance of the obligations imposed by the consent decree. 1997 WL 2474 at *10 (but declining to decide whether monetary sanctions could be awarded for failure to comply with the obligations). Section 3626 only excuses from termination obligations to pay compensatory money damages. The Court interprets section 3626 as asking for termination of the obligations imposed by prospective relief with the results that such obligations cannot be enforced by any type of court proceeding.

cient to correct such violations. Until the Court makes such determinations the Court cannot decide whether it is appropriate to terminate the decree and judgment order in this case.

*CONCLUSION*

For the foregoing reasons, the Court takes the Motion to Terminate **UNDER ADVISE-MENT.**