84 F.3d 865
 Donald J. HAGER, d/b/a Hager Performance Tire Specialists
and Albert L. Baker, d/b/a Thunder Valley
Landfill, Plaintiffs-Appellants,
v.
CITY OF WEST PEORIA, a municipal corporation, and John F.
Roberts, Defendants-Appellees.
 No. 95-2166.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 17, 1996.
Decided May 17, 1996.
 
 Gary L. Morris (argued), Peoria, IL, for plaintiffs-appellants.
 William C. Barasha (argued), Kurnik, Cipolla & Barasha, Arlington Heights, IL, William C. Connor, The Leiter Group, Peoria, IL, for defendants-appellees.
 Before BAUER, EASTERBROOK, and MANION, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 Two businesses located just outside West Peoria, Illinois can access their properties only from a public road that lies within the city's limits. West Peoria enacted municipal ordinances regulating truck traffic on that road. Because deliveries by large trucks are integral to these businesses, they challenge the ordinances, alleging among other things that the ordinances effect takings of their properties and violate their constitutional right to equal protection. The district court properly dismissed the takings claims as prematurely filed in federal court. The plaintiffs have not pleaded a viable theory of recovery for violation of the Equal Protection Clause. Accordingly, we affirm.
 
 I.
 
 2
 Plaintiff Hager operates a tire store and plaintiff Baker a landfill business, both of which are located off a private driveway at the end of West Rohmann Avenue in Peoria County, Illinois. The only access to their properties from any public road is through this private driveway. West Rohmann Avenue lies within the city limits of West Peoria, Illinois, which was incorporated in November 1993. Plaintiffs' properties are contiguous with but outside the city limits. Large trucks approach their businesses daily from West Peoria via West Rohmann Avenue and the private driveway. Many of the companies and individuals that do business with plaintiffs use these large trucks for deliveries and pick-ups.
 
 
 3
 In 1994 the West Peoria city council determined that heavy trucks had become a burden on the city's streets. The city council specifically noted that use of the streets by heavy trucks required "constant resurfacing," and that those trucks created safety hazards during certain hours of the day. The council consequently determined it had "a need to restrict weight limits on certain streets."
 
 
 4
 To address these concerns, the city council enacted Ordinance 94-30, which provided that truck traffic on the last three blocks of West Rohmann Avenue must weigh less than eight tons, although local vehicles under fifteen tons making local deliveries could apply for a permit to exceed that weight limit. Permits cost $12.50 per load for vehicles from eight to twelve tons and $20.00 per load for vehicles from twelve to fifteen tons. The ordinance prohibited vehicles in excess of fifteen tons. The city enforced this ordinance by placing a road weight limit sign on West Rohmann Avenue. The typical truck that serviced the landfill "coincidentally" weighed eight tons empty and over fifteen tons loaded.
 
 
 5
 Two months later the city council enacted Ordinance 94-31, which imposes weight restrictions for trucks and vehicles traveling on most West Peoria streets, including West Rohmann Avenue. The new ordinance provides that vehicles using city streets which exceed eight tons but not fifteen tons may apply for a permit for a fee of $12.50, and those which exceed fifteen tons but weigh less than twenty-six tons may apply for a permit for a fee of $20.00. Ordinance 94-31 exempts municipal vehicles, vehicles making deliveries to West Peoria residents, and vehicles of businesses performing construction services within the city limits. The city also enacted Ordinance 94-26, which erects a stop sign on Rohmann Avenue at the end of the private driveway leading to plaintiffs' properties. The location of this stop sign makes it difficult to exit plaintiffs' driveway because truck drivers had to stop on an incline.
 
 
 6
 Hager's and Baker's properties are zoned for commercial and industrial use. Plaintiffs anticipated using them for these purposes, which require access by heavy trucks. Before summer 1994 no road weight limit signs had graced West Rohmann Avenue leading to their properties. Faced with large trucks effectively losing access to their businesses, Hager and Baker filed this suit in federal court against the city and its street department manager challenging the ordinances as violating the U.S. Constitution and Illinois state law.
 
 
 7
 Hager and Baker complain that the ordinances violate their constitutional right to equal protection because they exempt similarly situated West Peoria businesses from having to obtain truck permits and pay fees. Plaintiffs further claim the ordinances inversely condemn their properties, severely reduce their value, and limit their potential industrial and commercial use without fair compensation. The complaint also contains state law allegations of tortious interference with plaintiffs' delivery contracts with other trucking businesses.
 
 
 8
 Pursuant to Fed.R.Civ.P. 12(b)(6), West Peoria moved to dismiss the takings claims as premature considering the remedies available under Illinois law for an alleged taking. West Peoria also sought dismissal of the equal protection claims on two grounds: (1) plaintiffs did not plead membership in a suspect class or deprivation of a fundamental right, and the ordinances are rationally related to legitimate governmental purposes; and (2) the permit fees in the ordinances are taxes insulated from constitutional challenge by the Tax Injunction Act, 28 U.S.C. § 1341:
 
 
 9
 The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.
 
 
 10
 Because the lower court had only supplemental jurisdiction over the state tortious interference with contract claims, the city argued their dismissal would follow that of the federal question claims.
 
 
 11
 The district court conducted an evidentiary hearing at which West Peoria's mayor testified. He stated that the city originally passed the ordinances to "get some money for maintaining this road." He admitted on cross-examination, however, that the weight restrictions had generated a total of only $20.00 in revenue from a single permit fee, that all other permit fees had been waived, and that the single permit fee collected would have been waived as well had Baker negotiated with city officials. He also admitted that while the word "tax" did not appear in the ordinances, the term "regulate" did repeatedly, and that in addition to the city's intention to raise revenue by the ordinances, it wanted to regulate West Rohmann Avenue for safety and resurfacing purposes. The district judge found the mayor to be a credible witness.
 
 
 12
 The district court dismissed plaintiffs' takings claims as premature because they had yet to seek compensation through established state procedures. The court also considered whether the Tax Injunction Act precluded plaintiffs' equal protection claims by deciding whether the permit fees charged by the city pursuant to the ordinances were a tax, and therefore within the scope of the Act, or a regulation, in which case the Act would not apply. "[A]lthough a close question," the district court concluded that the permit fees at issue were a tax rather than a regulatory measure. Accordingly, pursuant to the Tax Injunction Act, which applies to municipal as well as state taxes,[1] the district court concluded it lacked federal jurisdiction over plaintiffs' equal protection claims. Absent any federal claims, the court declined supplemental jurisdiction over plaintiffs' state law claims and granted the motion to dismiss.
 
 
 13
 We review the district court's decision de novo, accepting as true any well-pleaded allegations in the complaint and drawing all reasonable inferences in favor of the plaintiffs. Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178-79 (7th Cir.1996) (citation omitted).
 
 II.
 A. Takings/Inverse Condemnation Claims
 
 14
 In Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court ruled that if a state provides adequate procedures for seeking just compensation, a property owner cannot state a claim in federal court under the Fifth Amendment until he has used these procedures and been denied just compensation. Id., 473 U.S. at 195, 105 S.Ct. at 3121; see also Yee v. City of Escondido, Cal., 503 U.S. 519, 533-34, 112 S.Ct. 1522, 1531-32, 118 L.Ed.2d 153 (1992) (claim that municipal ordinance as applied effected regulatory taking would be unripe if claimant had not sought state redress, citing Williamson County, 473 U.S. at 186-97, 105 S.Ct. at 3116-22). This court has applied this ripeness doctrine. DeHart v. Town of Austin, 39 F.3d 718, 724 (7th Cir.1994) (premature to decide whether ordinance prohibiting possession of wild animals deprived wild animal business owner of alleged constitutionally protected property interests without due process; suit for excessive regulation is for inverse condemnation, which belongs first in state court, citing inter alia Williamson County, 473 U.S. at 195-96, 105 S.Ct. at 3121-22); River Park, Inc. v. City of Highland Park, 23 F.3d 164, 167 (7th Cir.1994) (property owner's Illinois common law rights in zoning classification dispute meant that suit for inverse condemnation belonged in state court, citing Williamson County, 473 U.S. at 195-96, 105 S.Ct. at 3121-22); Estate of Himelstein v. City of Fort Wayne, Ind., 898 F.2d 573, 575-578 (7th Cir.1990) (property owner's takings claim for city council's failure to issue building permit after property had allegedly been rezoned not ripe for review where owner had not brought inverse condemnation action in state court and not shown state inverse condemnation procedure was unavailable or inadequate). "[A] landowner cannot complain that his constitutional right [to just compensation for a taking] has been denied until he exhausts his remedies for obtaining a compensation award or equivalent relief from the state." Gamble v. Eau Claire County, 5 F.3d 285, 286 (7th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1096, 127 L.Ed.2d 410 (1994).
 
 
 15
 Illinois law provides a judicially-created remedy of inverse condemnation for property owners aggrieved by municipal legislation. Plaintiffs admit this. This admission acknowledges that federal court is not the proper venue for plaintiffs' takings claims. Only upon completion of existing state procedures and denial of just compensation may plaintiffs properly claim a taking without just compensation in federal court. "Until then [plaintiffs] cannot know whether [they] have suffered the only type of harm for which the just-compensation provision of the Constitution entitles [them] to a remedy." Gamble, 5 F.3d at 286. Thus, the district court correctly dismissed plaintiffs' takings claims as unripe.
 
 
 16
 The exhaustion requirement of Williamson County applies whether plaintiffs claim an uncompensated taking, inverse condemnation, or due process violation.[2] See Williamson County, 473 U.S. at 194-95, 199-200, 105 S.Ct. at 3120-21, 3123-24 (takings and due process claims); River Park, 23 F.3d at 167 (substantive or procedural due process claim); Gamble, 5 F.3d at 286 (takings claims); Himelstein, 898 F.2d at 576 (takings and substantive due process claims). That plaintiffs have sued for "inverse condemnation" with a reference to due process, whether substantive or procedural, therefore does not alter our analysis. "A person contending that state or local regulation of the use of land has gone overboard must repair to state court." River Park, 23 F.3d at 167. Hager and Baker must first pursue their claims, whether in the form of a takings challenge or a due process claim, in Illinois state court.
 
 B. Equal Protection Claims
 
 17
 Hager and Baker also claim West Peoria's ordinances violate their constitutional right to equal protection because they effectively exempt certain West Peoria businesses from having to obtain truck permits. The plaintiffs claim these municipal regulations are excessive and create an arbitrary, irrational, and discriminatory classification with no rational basis related to public safety or highway maintenance and diminish the value of their property.
 
 
 18
 We do not postpone consideration of plaintiffs' equal protection claims under the ripeness doctrine applied above.[3] If plaintiffs' only real claim was that West Peoria has rendered their businesses worthless, then pursuant to the rule of Williamson County they must go to state court, as delineated above, because their claim was truly (and solely) one for a taking. But for two reasons we conclude that plaintiffs also plead a bona fide equal protection claim. First, the prayer for relief in their complaint seeks primarily injunctive relief rather than damages.[4] This indicates that plaintiffs claim unequal treatment, a claim which they should be free to litigate in federal court immediately. Second, plaintiffs' claim would evaporate if the city treated everyone equally, that is, actually collected the fee from every heavy truck. Thus, rather than just a single takings claim with different disguises (including one for equal protection), in this case at least, in addition to a takings/inverse condemnation claim, plaintiffs have raised a legitimate equal protection claim to be considered on its merits.
 
 1.
 
 19
 The district court accepted the city's argument that the Tax Injunction Act proscribes plaintiffs' equal protection claims. It decided that because permit fee revenue went into West Peoria's general fund, would allegedly be used for road repair, and could conceivably exceed the costs imposed by heavy truck traffic, the ordinances constituted a tax rather than a regulation, thereby precluding plaintiffs' claims under 28 U.S.C. § 1341.
 
 
 20
 Courts faced with distinguishing a "tax" from a "fee" "have tended ... to emphasize the revenue's ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency's cost of regulation." San Juan Cellular Tel. Co. v. Public Serv. Comm'n of Puerto Rico, 967 F.2d 683, 685 (1st Cir.1992). This court specifically advanced such a test in Diginet, Inc. v. Western Union ATS, Inc., 958 F.2d 1388 (7th Cir.1992):
 
 
 21
 If the fee is a reasonable estimate of the cost imposed by the person required to pay the fee, then it is a user fee and is within the municipality's regulatory power. If it is calculated not just to recover a cost imposed on the municipality or its residents but to generate revenues that the municipality can use to offset unrelated costs or confer unrelated benefits, it is a tax, whatever its nominal designation.
 
 
 22
 Id. at 1399.
 
 
 23
 The district court in this case seized on the fact that the permit fee revenue was earmarked for the general city fund, and reasoned that under the "ultimate use" test, the permit fees were a tax. We believe the district court misconstrued this fact. Rather than a question solely of where the money goes, the issue is why the money is taken. Although the district court correctly noted the ultimate destination of the heavy truck permit fee, the language of the ordinances and the facts underlying their passage do not support the conclusion that they levy a tax rather than regulate the weight of trucks using city streets.
 
 
 24
 It places form over substance to conclude that $20.00 actually collected and deposited in the city's general coffers render these ordinances tax legislation. The revenue generated from the permit fees could not exceed the amount necessary to pay for the road repair made necessary by the heavy truck traffic when, as the mayor testified, only $20.00 had been collected and all other permit fees had been waived. " '[A]n assessment levied for public purposes' would not be a tax where it was part of a regulatory program." Bidart Bros. v. The California Apple Comm'n, 73 F.3d 925, 933 (9th Cir.1996) (quoting Union Pacific Railroad Co. v. Public Utility Comm'n, 899 F.2d 854, 861 (9th Cir.1990)).
 
 
 25
 The ordinances before us considered in their entirety fall to the "regulation" rather than the "tax" end of the spectrum. See San Juan Cellular Tel., 967 F.2d at 685. The mayor's various admissions at the evidentiary hearing, including that West Peoria intended to regulate West Rohmann Avenue, support this conclusion. The stated purposes in the "whereas" clauses of Ordinances 94-30 and -31 are public safety and highway maintenance, not revenue collection.[5] Cf. Indep. Coin Payphone Assoc. v. Chicago, 863 F.Supp. 744, 755 (N.D.Ill.1994) (one of ordinance's stated purposes is to generate revenue for the city). The Illinois statute that both ordinances incorporate states specifically that the city is authorized "to regulate a vehicle carrying loads within the municipality," not "tax" the vehicle. Indeed, all of the Illinois statutory authority cited in the ordinances is regulatory; none is from Illinois statutes governing a municipality's efforts to raise revenue. Moreover, carrying loads in excess of the weight limits in the ordinances is a misdemeanor violation under Illinois law. This implicates municipal police powers rather than taxing powers.
 
 
 26
 We thus have no doubt that the ordinances were passed to control certain activities, not to raise revenues. That the ordinances generate a permit fee which goes to the general city fund is only incidental to its regulatory nature. The district court unduly relied on a single $20.00 fee collection to conclude the ordinances constituted a "tax." Even were the permit fees to have been collected on a regular basis, regulatory fees that merely pay for the cost of regulation are not taxes. See, e.g., Government Suppliers Consolidating Services, Inc. v. Bayh, 975 F.2d 1267, 1271 n. 2 (7th Cir.1992) (registration or renewal fee imposed by Indiana on municipal waste collection and transportation vehicles had a regulatory rather than revenue raising purpose; federal jurisdiction thus unaffected by Tax Injunction Act), cert. denied, 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993). At most the permit fees, if enforced, could have paid for the cost of regulation. A fee that reasonably estimates the cost imposed by the person required to pay the fee is better seen as a user fee within the municipality's regulatory power, not a tax.
 
 
 27
 Considering the ordinances in their entirety, and giving the "ultimate use" test for the Tax Injunction Act its proper context, the West Peoria ordinances cite authority, state intentions, and impose civil restrictions and criminal penalties which are regulatory in nature. Because West Peoria's ordinances are better viewed as a regulatory fee than a tax, 28 U.S.C. § 1341 does not preclude consideration of plaintiffs' equal protection claims.[6]
 
 2.
 
 28
 Because the district court concluded that the Tax Injunction Act deprived it of federal question jurisdiction over plaintiffs' equal protection claims, it did not consider the city's other arguments that these allegations should be dismissed for failure to state a claim upon which relief can be granted. Our de novo standard of review allows us to consider them now. See Zavesky v. Miller, 79 F.3d 554, 557 (7th Cir.1996) (quoting Roland v. Langlois, 945 F.2d 956, 962 n. 11 (7th Cir.1991) ("[A]n appellate court may affirm on any ground that finds support in the record.")) petition for cert. filed, (U.S. Apr. 3, 1996) (No. 95-8819).
 
 
 29
 Hager and Baker claim West Peoria erected a weight limit sign on West Rohmann Avenue in "an unreasonable, arbitrary and capricious exercise of the governmental police power." They contrast their circumstances with that of Stever, a competing landfill business located within city limits. They allege Stever did not have to pay the large truck permit fees. Plaintiffs claim the additional cost of the permit fees forces them to raise prices, putting them at a disadvantage against non-fee-paying competitors. They assert that they belong to a class of business owners located outside of West Peoria which have no access to their properties other than by the city streets. Thus, they must pay permit fees while similar businesses located in West Peoria need not. They claim their constitutional right to equal protection has been violated and they challenge the enactment and the enforcement of the West Peoria ordinances.
 
 
 30
 Plaintiffs have not claimed they are "members of a vulnerable group, racial or otherwise," such that unequal treatment would warrant strict scrutiny. See Esmail v. Macrane, 53 F.3d 176, 178 (7th Cir.1995). Access to real property does not rise to the level of a fundamental right such that its denial merits heightened scrutiny. "Where neither an invidious classification nor a deprivation of a fundamental interest is alleged, the equal protection clause requires only that the classification bear some rational relationship to legitimate governmental ends." Brown v. City of Lake Geneva, 919 F.2d 1299, 1302 (7th Cir.1990) (citing City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 446, 105 S.Ct. 3249, 3257-58, 87 L.Ed.2d 313 (1985)). Plaintiffs' claims also must surmount the presumption of rationality in the city's ordinances. Talley v. Lane, 13 F.3d 1031, 1035 (7th Cir.1994) (citing Wroblewski v. City of Washburn, 965 F.2d 452, 460 (7th Cir.1992)).
 
 
 31
 Accepting as true the allegations in the complaint and drawing all reasonable inferences in plaintiffs' favor, "we apply the resulting 'facts' in light of the deferential rational basis standard." Wroblewski, 965 F.2d at 460. As long as the West Peoria City Council had a rational basis for creating the classifications it did and enacted the ordinances to achieve a legitimate government end, the requirements of the Equal Protection Clause have been met. Pro-Eco, Inc. v. Board of Commissioners of Jay County, Ind., 57 F.3d 505, 514 (7th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 672, 133 L.Ed.2d 522 (1995).
 
 
 32
 Plaintiffs claim first that the ordinances as enacted violate equal protection. An ordinance may contain language of general applicability and still violate the Equal Protection Clause if that language, while not identifying any individual by name, could apply to only one person, and such a classification did not rationally relate to a legitimate governmental end. Pro-Eco, 57 F.3d at 515 n. 11. But Ordinance 94-31 and its restrictions on heavy trucking apply to many West Peoria roadways, not just West Rohmann Avenue and the plaintiffs. It could thus affect any business on the city's borders whose access depended upon any of the streets listed in the ordinance. This argument bears plaintiffs no fruit.
 
 
 33
 More importantly, the language of the ordinances themselves demonstrates that West Peoria enacted them with legitimate ends and means rationally related to those ends. The stated purposes of the ordinances are to ensure proper road maintenance and public safety. These are legitimate ends for municipal legislation. See, e.g., Ruiz v. Comm'r of Dept. of Trans. of the City of New York, 679 F.Supp. 341, 357 (S.D.N.Y.) (recognizing maintenance and safety concerns related to heavy trucks), aff'd, 858 F.2d 898 (2d Cir.1988). The ordinances list rational means to achieve those ends. See Brown, 919 F.2d at 1302. The West Peoria city council could reasonably conclude that imposing weight and timing restrictions on heavy truck traffic protected the health, safety, and welfare of the community. Promulgating weight restrictions with correlative permit fees and limiting large trucks to certain streets at certain times are not irrational steps to ensure safety and control street maintenance costs.
 
 
 34
 The best argument Hager and Baker could seemingly make would emphasize that Ordinance 94-31 exempts vehicles providing municipal and quasi-municipal services and vehicles making deliveries to West Peoria residents and businesses and performing construction services within the city. This would imply that the city ordinance favors such activity merely because it is local, and conversely burdens plaintiffs merely because they are not.
 
 
 35
 Even if plaintiffs' equal protection claims are so read, they do not necessarily have merit. Many jurisdictions have legitimate residency requirements. See, e.g., McCarthy v. Philadelphia Civil Service Comm'n, 424 U.S. 645, 647, 96 S.Ct. 1154, 1155, 47 L.Ed.2d 366 (1976) (local residence requirements for public employees comply with equal protection clause). But we do not read the exemption that way. The city council could have rationally concluded that city vehicles provide services essential to city life (e.g. garbage collection, water, sewer, and utility maintenance) and thus are entitled to an exemption. Further, we do not read the exemption for vehicles making deliveries to West Peoria residents and businesses and performing construction services within the city to favor West Peoria-based truckers. Nothing in the ordinance limits deliveries to city residents and businesses by city truckers instead of non-city truckers. Read in context, the ordinance rationally distinguishes between different types of activities: those of a commercial and service nature, such as parcel deliveries to businesses or building construction in the city, as opposed to those in the nature of heavy industry, such as hauling freight. Because the city council could have rationally concluded that trucking involved in light commercial and service businesses imposes less safety and regulatory concerns than heavy trucking, the ordinance passes muster under equal protection analysis.
 
 
 36
 Plaintiffs also challenge the ordinances as enforced. Although "[a]n ordinance generally applicable on its face but enforced for no legitimate reason against only an individual or a particular class may violate the Equal Protection Clause," Pro-Eco, 57 F.3d at 515 (citations omitted), such is not the case here. The single $20.00 permit fee collected from Baker does not rise to the level of a constitutional violation because the mayor admitted the fee would have been waived had Baker merely asked. The ordinances as amended apply to Stever's, the landfill business plaintiffs cite as receiving different treatment. The exhibits to the complaint demonstrate that any trucks entering Stever's are subject to the same weight restrictions as those on West Rohmann Avenue. Plaintiffs' explanations of their theory before this court reveal that they do not have a claim that the municipality's actions were "a spiteful effort to 'get' [them] for reasons wholly unrelated to any legitimate state objective." Cf. Esmail, 53 F.3d at 180; see Herro v. City of Milwaukee, 44 F.3d 550, 553 (7th Cir.1995). Their claims thus do not fall into the category requiring "last-ditch protection against governmental action wholly impossible to relate to legitimate governmental objectives." Esmail, 53 F.3d at 180.
 
 
 37
 The ordinances as enacted and enforced pursue legitimate governmental ends by rational means and thus do not violate the Equal Protection Clause. The district court's decision to dismiss these claims will be affirmed on this alternative basis.[7]
 
 III.
 
 38
 "[T]he remedy for excessive regulation is a suit for ... inverse condemnation--a suit that belongs in state court." DeHart, 39 F.3d at 724. Plaintiffs must pursue any remedies for a taking in that venue first. Their equal protection claims fail to state a claim upon which relief can be granted. Accordingly, we AFFIRM the district court's disposition of plaintiffs' takings claim and VACATE the district court's decision on the Tax Injunction Act and REMAND this case to that court with directions to DISMISS plaintiffs' equal protection claims pursuant to the dictates of this opinion.
 
 
 
 [1]
 The Tax Injunction Act has been held to apply to any tax, Schneider Transport, Inc. v. Cattanach, 657 F.2d 128, 132 (7th Cir.1981), including municipal and local taxes. See, e.g., Kimmey v. H.A. Berkheimer, Inc., 376 F.Supp. 49, 54 (E.D.Pa.1974) ("well settled and unquestioned" that 28 U.S.C. § 1341 applies to municipal taxes; citations omitted), aff'd, 511 F.2d 1394 (3d Cir.1975)
 
 
 [2]
 "[W]e have recognized the potential for a substantive due process claim in the context of land-use decisions that are arbitrary and unreasonable, bearing no substantial relationship to the public health, safety or welfare." Doherty v. City of Chicago, 75 F.3d 318, 325 (7th Cir.1996) (and citations therein)
 
 
 [3]
 In Himelstein we impliedly reserved the question whether equal protection claims such as plaintiffs' are ripe for consideration in federal court. See 898 F.2d at 578. In that case we reviewed a property owner's claim that a city council had refused to recognize the alleged rezoning of property and had declined to issue a building permit while classification of the property was in dispute thereby depriving the owner of equal protection under the law. We concluded the owner's claim was insufficient for failure to allege any facts in support of the equal protection claim. Id
 
 
 [4]
 Plaintiffs' prayers for relief under their equal protection claims in two separate sections seek preliminary and permanent injunctive relief pursuant to Fed.R.Civ.P. 65 against the city enforcing the ordinances. They include only one sentence requests for damages
 
 
 [5]
 Ordinance 94-30 begins as follows:
 WHEREAS, ... the City has the authority to impose weight limits and to prohibit the operation of trucks and commercial vehicles on City streets; and
 WHEREAS, ... the City may regulate a vehicle carrying loads within the municipality and ... may license and control all vehicles carrying loads and establish reasonable regulations and rules and fines and penalties; and
 WHEREAS, the City of West Peoria has determined that heavy trucks create an additional burden on the streets, and the streets which carry heavy truck traffic need constant resurfacing; and
 WHEREAS, certain streets belonging to the City of West Peoria were not designed to maintain heavy truck traffic; and
 WHEREAS, trucks also create an additional safety hazard during certain hours of the day; and
 WHEREAS, the City of West Peoria has determined for the above stated reasons and other reasons presented to the City Council that the City has a need to restrict weight limits on certain streets in the City of West Peoria....
 Ordinance 94-31 adds the following clause:
 WHEREAS, ... the City has the authority to restrict the use of highways under its jurisdiction by weights of motor vehicles; ... and eliminates the safety hazard clause. Neither ordinance mentions raising revenues or taxes.
 
 
 [6]
 This court's decision in Schneider, 657 F.2d at 132, is not to the contrary. In Schneider we found a Wisconsin Department of Transportation charge upon trucks to be a tax because the charge was used to help pay for highway construction, a "general" type of public expenditure. A state statute establishing vehicle registration fees stated the purpose of the fees in Schneider: revenue collection. Here the stated purpose of issuing permits is to identify authorized vehicles for regulatory purposes
 
 
 [7]
 Because we determine plaintiffs fail to state a federal question claim upon which relief can be granted, we affirm the district court's dismissal of their state law claims, which were based on supplementary jurisdiction pursuant to 28 U.S.C. § 1367