Sterling L. JAMES, et al., Plaintiffs,

v.

**Russell E. LASH, et al., Defendants.**

**HERMAN X. (Walker), et al., Plaintiffs,**

v.

**Ward LANE, Warden, Defendant.**

Nos. S 73–5 AS, 3687.

United States District Court,
N.D. Indiana,
South Bend Division.

May 15, 1997.

Ivan E. Bodensteiner, Valparaiso, IN, for Sterling X. James.

Sterling X. James, Michigan City, IN, pro se.

Raymond X. Stone, Michigan City, IN, pro se.

John X. Tinsley, Michigan City, IN, pro se.

Anthony W. Overholt, Office of Indiana Attorney General, Indianapolis, IN, for Russell E. Lash, Charles E. Moore, James DeVero, Robert Heyne.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This matter is before the court on a motion for relief from order filed by the plaintiffs on January 21, 1997. The plaintiffs move for relief from this court's order of December 13, 1996, terminating the consent decree previously entered in this case pursuant to 18 U.S.C. § 3626(b)(2). The defendants responded to the motion, and the plaintiffs have replied. In accordance with the following discussion, the court denies the plaintiffs' motion.

Section 802 of the Prison Litigation Reform Act ("PLRA"), Pub.L. 104–134, 110 Stat. 1321 (1996), amends 18 U.S.C. § 3626, governing remedies in prison condition cases. Under § 3626(b)(2), defendants are entitled to "immediate termination of any prospective relief" that has been granted in a prison conditions case "if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly draw, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Where the requisite findings were not made, the plaintiffs are nonetheless protected by § 3626(b)(3), which provides that prospective relief shall not terminate if the court finds that the relief "remains necessary to correct a current or ongoing violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation."

Relying on § 3262(b)(2), the defendants moved to terminate the previously entered consent decree directing the defendants to recognize the American Muslim Mission as a legitimate religious group, and afford this religious group with the same rights as other religious groups at the Indiana State Prison. Both parties agreed that the findings mandated by § 3262(b)(2) were not made before entering the consent decree, but the plaintiffs argued that if the consent decree were terminated the defendants might make changes that would substantially alter the plaintiffs' right to freely exercise their religion. The court construed § 3626(b)(3) as requiring a finding of a "current or ongoing" violation, and concluded that an unsupported assertion that the defendants might make changes resulting in a constitutional violation was simply too speculative to satisfy § 3626(b)(3). The court accordingly granted the defendants' motion and the consent decree was terminated.

The court noted in its memorandum that in several cases where defendants had filed a § 3626(b)(2) motion, the plaintiffs contended that this provision of the PLRA was unconstitutional. Because the plaintiffs in this action made no such argument, the court did not address the constitutional issues. The plaintiffs now ask the court to reconsider its decision, find the PLRA unconstitutional, and vacate the order terminating the consent decree. While the plaintiffs acknowledge that they could have raised the constitutional issues in response to the defendants' original motion, they maintain that the court should now address the issue to "accomplish justice." The defendants oppose the plaintiffs' motion, arguing that: (1) Rule 60(b) is not a vehicle to raise issues that were not raised in response to the original motion to terminate, (2) the constitutional issue should not be addressed because the court found that the defendants would have been successful in setting aside the judgment under Rule 60(b), and finally, (3) section 3626(b)(2) is not unconstitutional.

The plaintiffs bring their present motion under Federal Rule of Civil Procedure 60(b). The defendants contend that the plaintiffs' failure to raise Constitutional issues that could have been raised in response to defendants' original motion does not justify presenting new arguments at this time. Quoting *Nelson v. City Colleges of Chicago*, 962 F.2d 754, 755 (7th Cir.1992), the defendants argue that " 'Rule 60(b) is not designed to allow Plaintiffs and their counsel the opportunity to relitigate this case merely because they failed to raise a particular legal argument.' " The plaintiffs respond that because the constitutionality of the PLRA is in question, the court should address this issue to "accomplish justice."

Rule 60 provides that the court may relieve a party from a final judgment or order for five specific reasons as well as "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). Rule 60(b)(6) is essentially an equitable provision that is available where the specific reasons found in subsections (1) through (5) are inapplicable, and equitable action is appropriate to accomplish justice. *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Klapprott v. United States*, 335 U.S. 601, 614–615, 69 S.Ct. 384, 390–91, 93 L.Ed. 1099 (1949). Its application is limited to situations presenting "extraordinary circumstances" that create a substantial

danger of an unjust result. *Ackermann,* 340 U.S. at 202, 71 S.Ct. at 213–14; *Margoles v. Johns,* 798 F.2d 1069, 1073 (7th Cir.1986).

■ It is not the purpose of Rule 60(b)(6) to provide an avenue of relief from free, calculated, deliberate choices. *Ackermann,* 340 U.S. at 197–198, 71 S.Ct. at 211–12. Moreover, because a litigant is generally bound by his lawyer's acts, *Johnson v. Gudmundsson,* 35 F.3d 1104, 1117 (7th Cir.1994), the carelessness of an attorney is not a basis for relief under Rule 60(b)(6), *Helm v. Resolution Trust Corp.,* 84 F.3d 874, 879 (7th Cir.1996), including the failure to raise all available issues in the first instance. *E.g., Lee v. Village of River Forest,* 936 F.2d 976, 979–980 (7th Cir.1991). The plaintiffs' attorney could easily have raised the Constitutional issue in response to the defendants' original motion, and in fact, offers no explanation why the issue was not raised. With the above principles in mind, the court, nonetheless, concludes that the plaintiffs' motion should be addressed.

The order from which the plaintiffs seek relief deprived the plaintiffs of conditions agreed upon and approved by this court to cure a violation of their Constitutional rights. Because of the substantial rights implicated here, the court concludes that it would be manifestly unjust to effect this deprivation by enforcing a statute that itself may be unconstitutional.

### RULE 60(b)

As a point of clarification, the defendants are incorrect that the court found they would have been successful had they brought a motion under Federal Rule of Civil Procedure 60(b): The court noted that the need to find a current or ongoing violation under § 3626(b)(3) was consistent with considerations in deciding motions to modify or terminate consent judgments under Rule 60(b). The defendants are, however, correct that Rule 60(b) provides an alternate, independent source of authority for terminating the prospective relief granted, but the defendants have not filed a Rule 60(b) motion. Thus, the court did not address the consent decree under the Rule 60(b) standard, nor, without a pending motion, may it do so now.

### SEPARATION OF POWER

■ The plaintiffs claim that by enacting § 3626(b), Congress exceeded its authority under the separation of powers doctrine. Citing *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 239–40, 115 S.Ct. 1447, 1463, 131 L.Ed.2d 328 (1995), they argue that the consent decree entered on June 2, 1982, is a final judgment, and a federal statute "is unconstitutional to the extent that it requires federal courts to reopen final judgments entered before its enactment." The defendants contend that § 3626 does not require the opening of final judgments, but merely conforms to established law that equitable decrees, including consent decrees, "may be reopened to the extent equity requires." *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 391, 112 S.Ct. 748, 764, 116 L.Ed.2d 867 (1992).

In a case decided shortly after the Civil War, the Supreme Court upheld the power of Congress to remove jurisdiction from an appeal of a habeas corpus case after the case had been docketed and argued, *Ex parte McCardle,* 7 Wall. 506, 19 L.Ed. 264 (1869), but in *United States v. Klein,* 13 Wall. 128, 20 L.Ed. 519 (1872), the Supreme Court established that the scope of the holding in *McCardle* was not unlimited. After the Civil War, persons who had participated in the rebellion could not seek indemnification for property seized during the war, but the Supreme Court held that a person who received a presidential pardon was eligible to seek indemnification. In response to the Supreme Court's ruling, Congress enacted a statute limiting the Court's jurisdiction so that it could not hear indemnification claims of persons who were pardoned. In *Klein,* the Supreme Court held that this statute was unconstitutional because it was an attempt to prescribe a rule of decision in pending matters.

More recently the Court decided *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328. In *Plaut,* the Court considered an amendment to the Securities Exchange Act that changed the statute of limitations applicable to certain security fraud claims. The amendment would

allow suits that had earlier been time-barred, and required courts to reinstate cases previously dismissed under the former statute of limitations. The Court, finding that the amendment violated the separation of power doctrine, explained "[w]hen retroactive legislation requires its own application in a case already finally adjudicated, ... such an act exceeds the powers of Congress." *Id.* at 225, 115 S.Ct. at 1456. When a judgment has become final, Congress may not "declare by retroactive legislation that the law applicable to that case was something other than what the courts said it was." *Id.* at 227, 115 S.Ct. at 1457 (citations omitted).

■ Where acts of the legislative branch prevent the judicial branch from accomplishing its Constitutionally assigned functions, Congress passes "over the limit which separates the legislative from the judicial power." *United States v. Sioux Nation,* 448 U.S. 371, 391, 100 S.Ct. 2716, 2729, 65 L.Ed.2d 844 (1980). Thus, the separation of power doctrine is violated when Congress enacts legislation that prescribes a rule of decision in pending cases without changing the underlying substantive or procedural law, *see id.,* or enacts a statute that requires federal courts to reopen final judgments entered before the statute's enactment. *Plaut v. Spendthrift Farm,* 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328.

Section 3626(b)(2) compels courts to review judgments that grant prospective relief in prison condition cases and deprives the courts of the authority to enforce those judgments that grant relief beyond that required by the Constitution or federal law. While the plaintiffs concede that § 3626(b)(2) does not prescribe a rule of decision to a pending case because it does not mandate a specific result, it is their position that this section impermissibly requires the courts to reopen judgments that were final before the PLRA was enacted. The question is whether consent decrees granting prospective relief are final judgments within the meaning of the separation of power doctrine. Several courts have addressed this issue with differing results. In *Hadix v. Johnson,* 947 F.Supp. 1100 (E.D.Mich.1996), and *Gavin v. Ray,* No.

4–78CV70062, 1996 WL 622556 (S.D.Iowa, September 18, 1996), the courts concluded that a consent decree becomes a final judgment when appeals have been exhausted or the time for appeal has elapsed or been waived, and as such, Congress may not pass a law that requires courts to reopen those judgments. The Fourth Circuit, in *Plyler v. Moore,* 100 F.3d 365 (4th Cir.1996), found that a consent judgment providing for prospective injunctive relief is not a final judgment for separation-of-powers purposes. *Id.* at 371–372. The court drew a distinction between judgments for money damages and judgments granting injunctive relief, reasoning that even before passage of the PLRA, a judgment for injunctive relief remained subject to subsequent changes in the law. Likewise, in *Benjamin v. Jacobson,* 935 F.Supp. 332 (S.D.N.Y.1996), the court focused on the character of the relief awarded by the consent decree, stating that "[w]here the judgment imposes an executory decree ... and the court retains supervisory jurisdiction, the judgment's prospective effects are not final for separation-of-powers purposes." *Id.* at 344, citing *Daylo v. Administrator of Veterans' Affairs,* 501 F.2d 811, 818 (D.C.1974) (vulnerability to legislative alteration "would seem to depend on the character of the compliance called for") and *Western Union Tel. Co. v. International Bd. of Elect. Workers, Local Union No. 134,* 133 F.2d 955, 957 (7th Cir.1943) ("a decree may be final as it relates to an appeal ... yet, where the proceedings are of a continuing nature, it is not final"). The court in *Inmates of Suffolk County Jail v. Sheriff of Suffolk County.,* 952 F.Supp. 869 (D.Mass.1997), terminated the specific enforcement of prospective relief, cautioning in dicta that if the section was interpreted as obligating the court to "set aside the court's judgments contained in the various orders granting the prospective relief, that interpretation would present a serious constitutional issue." Finally, in *Jensen v. County of Lake,* 958 F.Supp. 397 (N.D.Ind.1997), the court concluded that consent decrees are final judgments, but because those decrees imposing prospective injunctive relief are subject to modification in equity in light of new circumstances, the mandates of § 3626(b)(2)

do not violate the separation of powers doctrine. *Id.* at 403–04.

In *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 379–380, 112 S.Ct. 748, 757–58, 116 L.Ed.2d 867 (1992 ), the Supreme Court specifically held that consent decrees are final judgments. *Id.* at 370, 112 S.Ct. at 753–54. The Seventh Circuit, recently addressing a Rule 60(b) motion to terminate a consent decree, explained that "[t]he fact that a court may exercise an extraordinary power to relieve the parties of a judgment's consequences, either through a modification or a termination of the decree in question, does not make the judgment any less final." *Balark v. City of Chicago,* 81 F.3d 658, 662 (7th Cir.1996). Accordingly, the court agrees with *Sheriff of Suffolk County* and *Jensen,* that the consent decree must be termed a final judgment, and further agrees with *Sheriff of Suffolk County, Jensen, Plyler,* and *Benjamin,* that the nature of the remedy imposed by the judgment is relevant to a separation of power analysis.

■■■ In *Rufo,* the Supreme Court explained in regard to consent decrees that " '[t]he consent is to be read as directed toward events as they then were. It is not an abandonment of the right to exact revision in the future, if revision should become necessary in adaptation to events to be.' " *Rufo v. Inmates of Suffolk Co.,* 502 U.S. at 379–380, 112 S.Ct. at 758, quoting *United States v. Swift & Co.,* 286 U.S. 106, 114–115, 52 S.Ct. 460, 462–63, 76 L.Ed. 999 (1932). Emphasizing the need for flexibility in administering consent decrees, the Court further stated that "sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." *Id.* at 380, 112 S.Ct. at 758, quoting *Railway Employees v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961). Unlike money judgments which compensate plaintiffs for past harms caused by the defendant, a consent decree in a civil rights case is an equitable remedy designed to rectify a current harm and protect against future harm. When a money judgment becomes final Congress may not enact a law requiring the court to reopen that judgment and redetermine the defendant's liability, the harm that is compensable, or the type of damages the plaintiff is entitled to recover as compensation. In contrast, even where a consent decree has become final in terms of the appeal process, the relief ordered is subject to the court's continuing supervision, and may be terminated or modified where it is "no longer equitable that the judgment have prospective application." *Rufo v. Inmates of Suffolk Co.,* 502 U.S. at 380, 112 S.Ct. at 758. The power of the court sitting in equity to modify a consent decree "was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." *Swift,* 286 U.S. at 114, 52 S.Ct. at 462. Thus, the specific relief granted by a consent decree never becomes "final" to the extent that it is beyond reconsideration.

The language of § 3626(b)(2) specifically limits its application to "terminat[ing] ... prospective relief." Had Congress enacted § 3626(b)(2) to read "vacate" or "rescind" rather than "terminate," and "Judgment" rather than "prospective relief" the court's conclusion in regard to the separation of power challenge might likely be different. However, "[t]he separation of powers violation consists of depriving judicial judgments of the conclusive effect that they had when announced ... the prohibition is violated when an individual final judgment is legislatively rescinded for even the very best of reasons." *Plaut* at 228, 115 S.Ct. at 1457 (check these cites). Section 3626(b)(2) does not disturb the findings of the court made at the time the prospective relief was granted, and terminating the consent decree in no way implicates the finality of the court's original decision that the defendants' conduct at the time the relief was granted violated plaintiffs' federal rights, or that the plaintiffs were entitled to a remedy. Moreover, where the court has not made findings, terminating the consent decree does not upset the parties' expectations at the time the consent was

negotiated and approved, for under Rule 60(b) and principles of equity jurisprudence, the plaintiffs never had the right to expect that the prospective relief agreed upon would continue in perpetuity. The court, therefore, concludes that § 3626(b)(2) does not deprive a final judgment of its conclusive effect or cause to what amounts to a legislative rescission of a final judgment.

### EQUAL PROTECTION

■■■■ The plaintiffs second contention is that § 3626(b)(2) violates the Constitutional guarantee of equal protection because it limits the remedies available to a certain class of plaintiffs—prison/jail inmates. In analyzing an equal protection challenge, the court must first determine the degree of scrutiny that applies to the governmental classification. If the statute targets a suspect class or burdens a fundamental right, the court must strictly scrutinize the statute, and it will be upheld only if it is narrowly tailored to serve a compelling government interest. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985); *Hager v. City of West Peoria*, 84 F.3d 865, 872 (7th Cir.1996). Where the challenged statute neither burdens a fundamental right nor targets a suspect class, the court applies minimal scrutiny, and the statute will be upheld "so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, —— U.S. ——, ——, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996); *Hager*, 84 F.3d at 872. The plaintiffs appropriately do not argue that prisoners are a suspect class, *see United States v. King*, 62 F.3d 891, 894 (7th Cir.1995); *Wilson v. Giesen*, 956 F.2d 738, 744 (7th Cir.1992), and § 3626(b)(2) does not touch upon a fundamental right. The court, accordingly, applies the rational basis test *See Plyler v. Moore*, 100 F.3d 365, 373 (4th Cir.1996).

■■■■ It is the plaintiffs' position that § 3626(b)(2) serves no legitimate governmental purpose. As long as there is a sound reason for the legislation, it need not be shown that it was the actual reason that motivated Congress. *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 461–62, 66 L.Ed.2d 368 (1980).

The party contesting the statute has the burden of negating " 'every conceivable basis which might support' " the statute. *Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993), quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973). The plaintiffs here have not met that demanding burden. The legislative history reveals that one consideration in passing the PLRA was to "help restore balance to prison conditions litigation and ... ensure that Federal court orders are limited to remedying actual violations of prisoners' rights...." 141 Cong. Rec. S. 14408–01 (daily ed. Sept. 27, 1995) (statement of Sen. Hatch). Congress intended the PLRA to "curtail interference by the Federal courts themselves in the orderly administration of our prisons," so that the "States will be able to run prisons as they see fit unless there is a constitutional violation, in which case a narrowly tailored order to correct the violation may be entered ... No longer, then, will we have consent decrees ... under which judges control the prisons literally for decades." 141 Cong. Rec.S. 14316–17 (daily ed. Sept. 26, 1995) (statement of Sen. Abraham). This leaves no doubt as to the governmental interest addressed by § 3626.

The court is in accord with other courts that have found this governmental interest to be legitimate. The Fourth Circuit Court of Appeals concluded that "Congress has a legitimate interest in preserving state sovereignty by protecting states from overzealous supervision by the federal courts in the area of prison conditions litigation." *Plyler v. Moore*, 100 F.3d at 374. A second court, likewise, reasoned that:

> Congress sought to ensure that federal courts return control over prison management to ... state and local governments as soon as federal court supervision became unnecessary ... [and] could also have wanted to create a uniform national standard for consent and litigated judgments based on a belief that consent judgments, even though agreed to initially, imposed severe burdens on states and local governments. and that these burdens exceeded

what was constitutionally required. These are legitimate interests.

*Benjamin v. Jacobson,* 935 F.Supp. 332, 354 (S.D.N.Y.1996). As the court noted in its previous memorandum, the interest in protecting state sovereignty by removing federal courts from the management of state facilities as quickly as is appropriate did not arise with the PLRA, but has been longstanding. *E.g., Bd. of Education of Oklahoma City Public Schools v. Dowell,* 498 U.S. 237, 248–49, 111 S.Ct. 630, 637–38, 112 L.Ed.2d 715 (1991) (at some point judicial oversight over state institutions must draw to a close).

The plaintiffs argue that federalism is not a concern where state or local governments voluntarily enter into an agreement. By § 3626, Congress limited the court's authority to approve and enforce provisions beyond those necessary to correct Constitutional or federal violations, which Congress may legitimately do. *The Glidden Co. v. Zdanok,* 370 U.S. 530, 557, 82 S.Ct. 1459, 1476–77, 8 L.Ed.2d 671 (1962) (Congress has the freedom, consistent with Article III, to impose limits on the remedial powers of a federal court); *Lauf v. E.G. Shinner & Co.,* 303 U.S. 323, 330, 58 S.Ct. 578, 581–82, 82 L.Ed. 872 (1938). Although the parties originally agreed to certain conditions, the concern is with the courts' authority to enforce conditions that go beyond rectifying Constitutional and federal wrongs. Section 3626 simply limits the court's power to enter an order granting injunctive relief in a consent situation to the same extent it is limited in fashioning injunctive relief after fully adjudicating a Constitutional claim. State correction officials are always free, of course, to provide conditions beyond the mandates of the Constitution or federal law; the court simply cannot enter an order directing them to do so.

■ The court further determines that § 3626(b)(2) is a rational means of addressing the government's legitimate interest. Section 3626(b)(3) provides that the court should not terminate a consent decree if it finds ongoing Constitutional violations. However, where past violations have been corrected, there is no longer a need for court supervision. Correctional officials will, pre-

sumably, continue to tailor their management decisions to comport with the Constitutional requirements the consent decree was designed to enforce. If not, prisoners retain the right to file suits in federal court in response to specific Constitutional violations that may arise after the consent decree is terminated.

### IMPAIRMENT OF CONTRACT

■ Plaintiffs' final argument is that § 3626(b)(2) deprives them of the benefit of the agreement entered into by the parties nearly fifteen years ago. A consent decree is more than a simple contract; "it is a contract wrapped in a judgment with attributes of both." *Application of County Collector of Winnebago County,* 96 F.3d 890, 894 (7th Cir.1996); *accord, Rufo,* 502 U.S. at 378, 112 S.Ct. at 757 ("[a] consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature"); *Local No. 93, International Association of Firefighters v. City of Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 3073, 92 L.Ed.2d 405 (1986) (consent decrees "have attributes both of contracts and of judicial decrees"); *Goluba v. School District of Ripon,* 45 F.3d 1035, 1037 (7th Cir.1995) (consent decree is a form of contract); *Kindred v. Duckworth,* 9 F.3d 638, 641 (7th Cir.1993) (consent decree in some respects is contractual in nature). Because consent decrees have characteristics of both contracts and judicial decrees, they are treated differently for different purposes. *Local No. 93,* 478 U.S. at 519, 106 S.Ct. at 3073–74, quoting *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 235–237 and n. 10, 95 S.Ct. 926, 933–35, 43 L.Ed.2d 148 (1975). As the defendants do not argue that the consent decree ought not to be treated as a contract in this context, the court assumes for purposes of this discussion that the consent decree is subject to an impairment of contract challenge.

■ A claim that federal legislation impairs existing contracts falls under the due process clause of the Fifth Amendment. *Pension Benefit Guaranty Corp. v. R.A. Gray Co.,* 467 U.S. 717, 733, 104 S.Ct. 2709, 2719–20, 81 L.Ed.2d 601 (1984). The Fifth

Amendment is not a complete bar to legislation that may impair private contracts. Congress has the "authority to pass legislation pertinent to any of the powers conferred by the Constitution, however [the legislation] may operate collaterally or incidently to impair or destroy the obligation of private contracts." *Continental Ill. Nat'l Bank & Trust Co. v. Chicago, Rock Island & Pac. Ry. Co.,* 294 U.S. 648, 680, 55 S.Ct. 595, 608, 79 L.Ed. 1110 (1935). In *Pension Benefit Guaranty* the Supreme Court rejected a heightened scrutiny test for federal statutes that impair private contracts, reasoning that the federal government is not restricted to the same extent as the states from impairing contracts because the protection afforded by the Fifth Amendment's due process clause is "less searching than [the protection] mandated by the contract clause." *Pension Benefit Guaranty Corp.,* 467 U.S. at 733, 104 S.Ct. at 2720.

■ The following year, the Supreme Court addressed a Fifth Amendment challenge to, amendments to the Rail Passenger Service Act, and directed that a party challenging the constitutionality of federal economic legislation must demonstrate, "first, that the statute alters contractual rights," and if so, that the "impairment is of constitutional dimension." *National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe R.R. Co.,* 470 U.S. 451, 472, 105 S.Ct. 1441, 1455, 84 L.Ed.2d 432 (1985). The challenging party must then "overcome a presumption of constitutionality and 'establish that the legislature has acted in an arbitrary and irrational way.'" *Id.,* quoting *Pension Benefit Guaranty Corp.,* 467 U.S. at 729, 104 S.Ct. at 2717–18. Where a private contract is impaired by a federal statute, judicial scrutiny is "quite minimal." *Id.*

By terminating the consent decree in this case, the plaintiffs have clearly lost those negotiated contractual rights that exceed federal requirements, but it is questionable whether this results in impairments of a Constitutional dimension. Even though a consent decree is terminated, the defendants remain responsible for providing any of the conditions agreed to by the parties and embodied in the consent decree that are otherwise mandated by the Constitution or federal law. If the defendants fail to provide those conditions, it is true that plaintiffs are no longer able to enforce the terms of the consent decree, but their right to challenge the Constitutional violations in federal court is not impaired. In other words, the rights lost by the plaintiffs are not their Constitutional or federal rights, but those additional, negotiated contractual rights that are not demanded by the Constitution.

Even assuming that the impairment of contractual rights is sufficiently serious to meet this prong of the *National Railroad* test, the final prong of the test is not satisfied. When previously addressing the equal protection challenge, this court concluded that there was a rational relationship between § 3626(b)(2) and a legitimate governmental interest. The same reasoning compels the court to conclude that in enacting § 3626(b)(2) the legislature did not act in an arbitrary and irrational way.

Plaintiffs contend that the *National Railroad* test is not applicable here because the statute at issue in that case did not alter the railroads' existing contractual rights, and it addressed economic, rather than Constitutional, issues. That the *National Railroad* plaintiffs failed to satisfy one prong of the test is no argument that the test should be abandoned. The argument that consent decrees effected by § 3626(b)(2) arose from actions asserting Constitutional rights is also unpersuasive. As discussed, §§ 3626(b)(2) and (3) require that consent decrees be terminated only if there is no ongoing Constitutional violation; plaintiffs' non-contractual Constitutional and federal rights remain in full force. The question is whether the legislature acted in an arbitrary and irrational way by limiting the power of the court to enforce contractual obligations beyond those mandated by the Constitution or federal law. Because the contractual impairments that result from the termination of consent decrees in prison condition cases do not implicate Constitutional rights, the court finds that it is appropriate to apply the *National Railroad* test to § 3626(b)(2), *see Benjamin v. Jacobson,* 935 F.Supp. 332, 356–357 and *Jensen v. County of Lake,* 958 F.Supp. at 404 (both applying the *National Railroad* test to the

same issue presented here), which, as discussed, the plaintiffs have not satisfied.

### CONCLUSION

For the reasons discussed above, the court concludes that §§ 3626(b)(2) and (b)(3) pass constitutional muster. Accordingly, the court DENIES the plaintiffs' motion for relief from order [docket entry # 11].

**SO ORDERED.**